United States Court of Appeals,

Fifth Circuit.

No. 92-2444.

Ako NOSE, Plaintiff-Appellant,

v.

ATTORNEY GENERAL of the UNITED STATES, et al., Defendants-Appellees.

June 11, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff Ako Nose, an illegal alien, filed a complaint against the Attorney General of the United States and assorted other entities ("Government"), seeking that the district court declare unlawful and enjoin the Government's enforcement of the Visa Waiver Pilot Program statute ("VWPP"), *see* 8 U.S.C.A. § 1187 (West Supp.1993), and its corresponding regulations. *See* 8 C.F.R. § 217 (1992). The district court granted summary judgment for the Government. Finding no error, we affirm.

I

Nose, a native and citizen of Japan, entered the United States on February 26, 1976, as a nonimmigrant student. Nose initially enrolled in English courses at the English Language Institute at the University of Michigan, Ann Arbor. Nose's plan apparently was to become proficient in English so that she could pass the state English proficiency examination and the state nursing board exam in Ohio, and then apply for a registered nursing position at the Cleveland Clinic. However, after studying English for more than two years and passing the state English proficiency exam, she was unable to pass the nursing exam. She therefore enrolled in the nursing program at Kalamazoo Valley Community College to become a registered nurse by obtaining a nursing degree. After three years at Kalamazoo College, Nose received her nursing degree. Nose subsequently accepted a registered nursing position at the Cleveland Clinic.

In March 1983, the Immigration and Naturalization Service ("INS") approved Nose's petition to change her status to that of a temporary worker, and extended her authorized stay until March 1984. In February 1984, Nose filed an application for an extension of her temporary worker status. Both Nose's application for extension and request for reconsideration were denied. Thereafter, the district director of the INS informed Nose that she had overstayed her voluntary departure date of May 4, 1984. For the next six years, Nose continued to work in the United States.

In May 1990, Nose traveled to Japan to marry her husband, Dr. Yukihiko Nose, who is a lawful, permanent resident of the United States. A month later, Nose was readmitted to the United States as an alien visitor under the VWPP.[1] The VWPP permits alien visitors to enter the United

---

[1] The VWPP provides:

**(a) Establishment of pilot program**

The Attorney General and the Secretary of State are authorized to establish a pilot program (hereinafter in this section referred to as the "pilot program") under which the requirement of paragraph (7)(B)(i)(II) of section 1182(a) of this title [requiring an alien to obtain a nonimmigrant visa] may be waived by the Attorney General and the Secretary of State ... in the case of an alien who meets the following requirements:

**(1) Seeking entry as tourist for 90 days or less**

The alien is applying for admission during the pilot program period (as defined in subsection (e)) as a nonimmigrant visitor (described in section 1101(a)(15)(B) of this title) for a period not exceeding 90 days.

....

**(3) Executes immigration forms**

The alien before the time of such admission completes such immigration forms as the Attorney General shall establish.

....

**(b) Waiver of rights**

An alien may not be provided a waiver under the pilot program unless the alien has waived any right—

(1) to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or

States from designated countries for a period not exceeding 90 days without obtaining a nonimmigrant visa. *See* 8 U.S.C.A. § 1187 (West Supp.1993). An alien's admission into the United States under the VWPP is dependent upon, *inter alia,* the alien's waiver of any right to contest "any action for deportation."[2] *See id.* Cognizant of the VWPP's 90-day limit, Nose reapplied for admission into the United States on five subsequent occasions. She last entered the country under the VWPP in January 1991.[3]

On April 23, 1991, Nose's authorized stay pursuant to the VWPP expired. That same day, Nose filed the underlying complaint seeking declaratory and injunctive relief from the district court. In her complaint, Nose alleged: (1) that the application of the VWPP (and its corresponding regulations),[4] to deport her without the benefit of a hearing, would violate her due process rights

---

(2) to contest, other than on the basis of an application for asylum, any action for deportation against the alien.

8 U.S.C.A. § 1187 (West Supp.1993).

[2]Congress established the VWPP "to facilitate international travel and promote the more effective use of the resources of affected government agencies while not posing a threat to the welfare, health, safety, and security of the United States." 53 Fed.Reg. 24,898 (1988); *see also* H.R.Rep. No. 99-682(I), 99th Cong., 2d Sess. 50, *reprinted in* 1986 U.S.C.C.A.N. 5649, 5654 ("The [Judiciary] Committee believes that a pilot visa waiver program ... would eliminate an unnecessary barrier to travel and ... would alleviate vast amounts of paperwork allowing U.S. consular offices to better meet high priority responsibilities such as visa screening in high fraud areas.").

[3]Upon her last entry into the United States, an immigration official warned Nose about abusing the VWPP. *See* Record on Appeal, vol. 2, at 76.

[4]The pertinent federal regulations of the VWPP provide:

**§ 217.4 Excludability and Deportability**

....

(c) *Determination of deportability*

An alien who has been admitted to the United States under the provisions of section 217 of the Act [codified at 8 U.S.C.A. § 1187] and of this part who is determined by an immigration officer to be deportable from the United States ... shall be removed.... Such removal for deportation shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability, except that an alien admitted as a Visa Waiver Pilot Program visitor who applies for asylum in the United States must be referred to an

under the Fifth Amendment; (2) that she did not knowingly and voluntarily waive her right to a deportation hearing under the VWPP; and (3) that the required waiver of rights under the VWPP did not include a waiver of her right to apply for non-asylum forms of relief from deportation. Finding that the application of the VWPP did not deprive Nose of her due process rights, and that Nose knowingly and voluntarily waived any right to contest any deportation action under the VWPP, the district court granted summary judgment for the Government.

Nose appeals, contending that the district court erred in concluding: (a) that she knowingly waived her right to a deportation hearing; and (b) that the required waiver of rights under the VWPP included a waiver of the right to apply for non-asylum forms of relief from deportation.[5]

## II

We review the district court's grant of a summary judgment motion de novo. *Davis v. Illinois Cent. R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991). Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). While we must "review the facts drawing all inferences most favorable to the party opposing the motion," *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986), that party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "Summary judgments, like directed verdicts, must be granted if there is no need for trial....

---

immigration judge for a determination of deportability.

8 C.F.R. § 217(4)(c) (1992).

[5]On appeal, Nose does not challenge, either in her brief on appeal or at oral argument, the application of the VWPP on constitutional grounds. *See* Brief for Nose at 19 ("This is a straightforward case of statutory construction."). We therefore need not decide the issue. If we were, however, reviewing a substantive due process or equal protection challenge to the VWPP, we note that we would be limited to a "rational basis" analysis. *See Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) ("Our cases "have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' " (quoting *Shaughnessy v. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953))); *see also Hernandez v. Cremer,* 913 F.2d 230, 236 (5th Cir.1990) (citing *Bell* ).

Mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *O'Hare v. Global Natural Resources, Inc.,* 898 F.2d 1015, 1017 (5th Cir.1990).

A

Nose first contends that she demonstrated a genuine issue of material fact as to whether she knowingly waived her right to a deportation hearing.[6] *See* Brief for Nose at 8-18. Generally, "even aliens who have entered the United States unlawfully are assured the protection[ ] of the fifth amendment due process clause," *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1036 (5th Cir.1982), including the right to a hearing before an immigration judge before being deported.[7] *See The Japanese Immigrant Case,* 189 U.S. 86, 101, 23 S.Ct. 611, 614-15, 47 L.Ed. 721 (1903) (holding that the due process of law forbids the State from "arbitrarily ... caus[ing] an alien who has entered the country, ... although alleged to be illegally here, to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States"). Although due process rights may be waived, *see, e.g., Boddie v. Connecticut,* 401 U.S. 371, 378-79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (holding that "the hearing required by due process is subject to waiver"), such a waiver must be made knowingly and voluntarily. *See Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (defining a waiver as " 'an intentional relinquishment or abandonment of a known right or privilege' " (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938))). In determining whether a waiver is knowing and voluntary, we must "indulge in every reasonable presumption

---

[6]On appeal, Nose does not dispute that she voluntarily signed the VWPP forms. *See* Brief for Nose at 14-18; Record on Appeal, vol. 2, at 56.

[7]The Government maintains that Nose did not waive a constitutional right since this is merely "a case sounding in contract—the INS let Nose in, and she promised to leave without a deportation hearing." Implicit in this argument is the notion that Congress has the unbridled authority to limit the procedural devices to protect the constitutional interests which it creates. The Supreme Court has rejected this "bitter with the sweet" approach. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a [constitutional] interest ..., it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.").

against a waiver." *Id.*

Contrary to Nose's contention, the undisputed summary judgment proof conclusively established that she knowingly waived her right to a deportation hearing. In making this determination, we consider, *inter alia,* the following factors: (1) the party's background and experience; (2) the clarity of the written waiver agreement; and (3) whether the party was represented by or consulted with an attorney. *See Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023 ("The determination of whether there has been an intelligent waiver of [a consti tutional] right ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."); *O'Hare,* 898 F.2d at 1017 (holding that the relevant factors for determining whether a waiver under the Age Discrimination and Employment Act ("ADEA") was knowing and voluntary included whether the party consulted with an attorney and the clarity of the written waiver agreement). The undisputed summary judgment evidence shows: (1) that Nose was a highly educated person who, in addition to receiving her nursing degree, studied English for over two years at a major United States university, and subsequently passed a state English proficiency exam, *see* Record on Appeal, vol. 2, at 144-45; (2) that each of the six VWPP forms which Nose signed, clearly stated that: "I am waiving my rights to ... a hearing before an Immigration Judge to determine my admissibility or deportability," and "I have read and understood all the questions and statements on this form," *see* Record Excerpts for Nose tab. 5;[8] and (3) that Nose consulted with an attorney about the VWPP before she first entered the United States under the VWPP. *See* Record on Appeal, vol. 2, at 109-12. In opposing summary judgment, Nose only submitted her own deposition, in which she repeatedly stated that she neither read, nor understood, the VWPP forms which she signed. *See, e.g.,* Record on Appeal, vol. 2, at 84-86, 107. Under these circumstances, the district court properly concluded that Nose did not demonstrate the existence of a *genuine* factual issue as to whether she knowingly waived her right to a deportation hearing. *See, e.g., O'Hare,* 898 F.2d at 1017-18 (affirming summary judgment on issue of knowing and voluntary

[8]Moreover, the record indicates that the first VWPP form which Nose signed was printed in Japanese. *See* Record Excerpts for Nose tab. 5. Nose does not dispute that the Japanese-speaking form differed in any way from the English-speaking form.

waiver under the ADEA where appellant had experience and training to understand a relatively simple document and consulted with attorneys about the waiver, notwithstanding appellant's claim that he was under "stress" when he signed the waiver); *Rogers v. General Elec. Co.,* 781 F.2d 452, 455-56 (5th Cir.1986) (affirming summary judgment on issue of knowing and voluntary waiver of Title VII rights where document "unambiguously released any claims [appellant] had under Title VII" and appellant was advised before signing document that she could consult with an attorney, notwithstanding appellant's claim that waiver was not made knowingly).

## B

Nose next argues that the district court erred in concluding that the waiver of rights under the VWPP, *see* 8 U.S.C.A. § 1187(b), included a waiver of the right to apply for non-asylum forms of relief from deportation.[9] *See* Brief for Nose at 18-23. We disagree. The express language of § 1187(b) states that "[a]n alien may not be provided a waiver under the pilot program unless the alien has waived any right ... to contest, other than on the basis of an application for asylum, *any action for deportation* against the alien." 8 U.S.C.A. § 1187(b) (emphasis added). Because this section unambiguously states that a VWPP-alien may only apply for asylum relief as a means of contesting deportation,[10] we conclude that § 1187(b) forbids Nose from applying for other forms of relief from deportation. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984) (holding that courts "must give effect to the unambiguously expressed intent of Congress"); *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (relying upon the ancient statutory construction maxim of *expressio unius est exclusio alterius,* for the proposition that "[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode").

---

[9]For example, Nose claims that the VWPP still allows her to apply for a suspension of deportation and adjustment of status to that of a permanent resident. *See* 8 U.S.C.A. § 1254 (West Supp.1993).

[10]*See* 53 Fed.Reg. 24,898 (1988) ("The only statutory clause in ... section [1187(b) ] which makes an exception to "any action for deportation' is "other than on the basis of an application for asylum.' ").

## III

For the foregoing reasons, we **AFFIRM.**