**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 6 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RACHEL ITAEVA,

      Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,

      Respondent.

No. 01-9547

---

**Petition for Review of the Decision of the**
**Board of Immigration Appeals**
**(No. A70-552-850)**

---

Submitted on the briefs:[*]

L. Ari Weitzhandler, Denver, Colorado, for the Petitioner.

M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration
Litigation and Anthony P. Nicastro, Attorney, Office of Immigration Litigation
Civil Division, Washington, District of Columbia, for the Respondent.

---

Before **KELLY**, **BALDOCK** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

[*]At the parties' request, the case is unanimously ordered submitted without
oral argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

Under the Visa Waiver Program ("VWP"), visitors from certain countries may be admitted to the United States as nonimmigrants for ninety days without obtaining a nonimmigrant visa at a United States consulate abroad. [1] In return for this streamlined procedure, the nonimmigrant agrees to waive the right to contest a removal order, other than on the basis of an application for asylum. See 8 U.S.C. § 1187. In the present case, at issue is whether petitioner Rachel Itaeva can apply for suspension of deportation despite overstaying her prior authorization to enter this country under the VWP. We hold that Itaeva is statutorily barred from applying for a suspension of deportation. Accordingly, we affirm the decision and order of the Board of Immigration Appeals ("BIA").

## I

Rachel Itaeva is a native of Russia and a Swedish citizen who first entered the United States in April 1986. In September 1989, Itaeva re-entered the country. The 1989 stamp on her passport indicates WT status, a designation which, according to the INS, means "waiver/tourist." Itaeva admits that her 1989

---

[1] The VWP was first enacted in 1986 and was entitled the Visa Waiver Pilot Program ("VWPP"). The program was so successful that in 2000 Congress made it permanent and renamed it the Visa Waiver Program. See 8 U.S.C. § 1187. We will refer to the program as the VWP.

entry was pursuant to the VWP. After that entry, she was eligible to remain in the United States until December 16, 1989.

Itaeva remained in the country well beyond December 16, 1989. In August 1992, she filed an application for asylum, and in January 1993, she again re-entered the country, after a brief absence for personal reasons. This last entry was also pursuant to the VWP. In 1996, she and her children were served with an order to show cause and notice of hearing, referencing the 1989 entry, and alleging that they were deportable for having remained in the United States beyond their authorized time.

At hearings before an immigration judge, Itaeva conceded deportability and pressed her application for suspension of deportation. The immigration judge determined that, because she entered under the VWP, she was statutorily barred from applying for or receiving suspension of deportation. The immigration judge did not rule on Itaeva's application for asylum.

Itaeva appealed to the BIA which agreed with the immigration judge that suspension of deportation was not available to her under the terms of the VWP. Remedying the immigration judge's oversight in failing to rule on Itaeva's asylum application, the BIA reviewed her application de novo, determining that she had

failed to establish grounds for asylum. [2] The BIA issued its order on November 27, 2001. In her petition to this court, Itaeva argues that once she was placed in deportation proceedings, she remained eligible under the VWP to apply for a suspension of deportation.

We review the BIA's legal conclusions de novo. Lockett v. INS, 245 F.3d 1126, 1128 (10th Cir. 2001). However, we accord deference to the Board's conclusions "unless they are clearly contrary to the statute's language or to congressional intent." Id. Moreover, we review jurisdictional questions de novo. Garcia v. City of Albuquerque, 232 F.3d 760, 765 (10th Cir. 2000).

## II

Before 1996, we had jurisdiction to review final deportation orders under 8 U.S.C. § 1105a. In 1996, however, this provision was repealed by § 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). "IIRIRA dramatically changed the scope and nature of judicial review in exclusion cases." Woldemeskel v. INS, 257 F.3d 1185, 1187 n.1 (10th Cir. 2001). Here, however, because the INS commenced deportation proceedings against Itaeva in 1996, before IIRIRA's effective date of April 1, 1997, and because the final deportation order was entered on November 27, 2001, well after October 31,

---

[2] Itaeva does not appeal the BIA's decision regarding her application for asylum.

- 4 -

1996, our review is governed by the pre-IIRIRA rules as amended by IIRIRA's transitional rules. Id.; see also 8 U.S.C. § 1252 ; 8 U.S.C. § 1101. "Under the transitional rules, § 1105a remains in effect but for minor procedural amendments." Woldemeskel, 257 F.3d at 1187 n.1. We therefore have jurisdiction under § 1105a to review the BIA's final deportation order in this case.

The Immigration and Naturalization Service ("INS") argues, however, that 8 U.S.C. § 1252(g) deprives this court of jurisdiction. That provision provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Section 1252(g) became effective on April 1, 1997, the effective date of IIRIRA. Unlike some other provisions of IIRIRA, however, § 1252(g) applies retroactively "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." See Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1144 (10th Cir. 1999). While this limitation would seem to bar our jurisdiction in this case, the Supreme Court has instructed otherwise.

In Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999), the Supreme Court clarified the reach of § 1252(g), holding that it is

limited to a decision or action of the Attorney General "to <u>commence</u> proceedings, <u>adjudicate</u> cases, or <u>execute</u> removal orders" (quotation omitted). Actions not within the exclusive jurisdiction of the Attorney General include: "the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." <u>Id.</u> Following this analysis, and applying our later precedent, we do not consider the review of the final deportation order in this case to fall within the narrow strictures of § 1252(g).

In <u>Jurado-Gutierrez</u>, we examined the holding in <u>American-Arab Anti-Discrimination Committee</u>, contrasting a request for review of a final deportation order with "the Attorney General's decision to commence proceedings, adjudicate cases, or execute a removal order." 190 F.3d at 1144. Concluding that § 1252(g) had no application to review of deportation orders under 28 U.S.C. § 2241, we characterized the habeas petitions as "request[s] to review the immigration courts' decisions to include various provisions in the final order that is the product of the adjudication." <u>Id.</u> at 1145 (quotation omitted). Similarly, we view the instant petition as a request to review the provision in the BIA's final order—that suspension of deportation is unavailable to Itaeva, a VWP visitor—that is the product of the adjudication. Thus, under the reasoning of <u>Jurado-Gutierrez</u>,

review of a final deportation order is not included under the strictures of § 1252(g) and the statute does not defeat our jurisdiction over the present appeal. See also Hiroshi Motomura, Judicial Review in Immigration Cases after AADC: Lessons from Civil Procedure, 14 Geo. Immigr. L.J. 385, 408 (2000) (concluding that "[s]ubsection (g)'s bar to judicial review of any 'decision or action' to 'execute removal orders' does not bar judicial review of the orders themselves").

Finally, the INS contends that, because the only way to contest an action for deportation under the VWP is through an application for asylum, we lack jurisdiction to consider this petition because Itaeva has not appealed the denial of her asylum application. We find no support in the law for this argument.

As noted above, under the transitional rules which apply here, this court has subject matter jurisdiction to review a final order of deportation. Woldemeskel, 257 F.3d at 1187 n.1. If Congress had intended to deprive us of jurisdiction over a VWP visitor's § 1187(b)(2) claim (regarding deportation) it could have specified that the alien had waived the right to appeal as it did in § 1187(b)(1) (regarding admissibility at port of entry). [3]

---

[3] Under 8 U.S.C. § 1187(b)(1), a VWP visitor waives the right to "review or appeal . . . an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States." Id. (emphasis added) In contrast, under § 1187(b)(2), a VWP visitor waives the right "to contest, other than on the basis of an application for asylum, any action for removal." Id. (emphasis added).

In sum, we have jurisdiction over Itaeva's petition under § 1105(a). Neither § 1252(g) nor § 1187(b)(2) defeats our jurisdiction because we are reviewing the portion of the BIA's order which holds that Itaeva is statutorily barred from applying for a suspension of deportation.

## III

Under the terms of the VWP, the Attorney General may waive the requirement of a valid nonimmigrant visa for certain visitors who come to the United States for business or pleasure purposes and who stay not more than ninety days. See 8 U.S.C. § 1187. As explained by the Fifth Circuit,

> Congress established the [VWP] to facilitate international travel and promote the more effective use of the resources of affected government agencies while not posing a threat to the welfare, health, safety, and security of the United States. 53 Fed. Reg. 24,898 (1988); see also H.R. Rep. No. 99-682(I), 99th Cong., 2d Sess. 50, reprinted in 1986 U.S.C.C.A.N. 5649, 5654 ("The [Judiciary] Committee believes that a pilot visa waiver program . . . would eliminate an unnecessary barrier to travel and . . . would alleviate vast amounts of paperwork allowing U.S. consular offices to better meet high priority responsibilities such as visa screening in high fraud areas.").

Nose v. Attorney Gen., 993 F.2d 75, 77 n.2 (5th Cir. 1993) (quotation omitted).

As mentioned above, in return for the ability to legally enter the United States without a visa, participants in the VWP waive any right "to contest, other than on the basis of an application for asylum, any action for removal . . . ."

8 U.S.C. § 1187(b)(2). This petition requires us to determine whether a request for suspension of deportation is a "contest" to the action for removal, barred by the statute.

The Fifth Circuit appears to be the only circuit court to address the precise issue presented in this petition. In <u>Nose</u>, the plaintiff entered the United States pursuant to the VWP. On the day her ninety-day authorized stay expired, the plaintiff filed an action for declaratory and injunctive relief in the federal district court. She alleged that deportation under the VWP violated her right to due process, that her waiver had not been knowing and voluntary and that any waiver under the VWP did not waive her right to apply for non-asylum types of relief from deportation. In entering summary judgment for the Attorney General, the district court found that the VWP did not deprive the plaintiff of due process and that she had knowingly waived any right to contest any deportation action. The Fifth Circuit affirmed. 993 F.2d at 80.

<u>Nose</u> involved the same claim Itaeva makes here, specifically that the VWP allowed the plaintiff to apply for suspension of deportation. <u>See</u> <u>id.</u> at 80 n.9. Rejecting the plaintiff's argument, the court held that her waiver of rights under the VWP to "contest" her deportation necessarily included the waiver of her right to apply for non-asylum forms of relief from deportation. Quoting 8 U.S.C. § 1187(b): "'[a]n alien may not be provided a waiver under the pilot program

unless the alien has waived any right . . . to contest, other than on the basis of an application for asylum, <u>any action for deportation</u> against the alien,'" <u>Id.</u> at 80 (emphasis in original), the court held that "[b]ecause this section unambiguously states that a VWPP-alien may only apply for asylum relief as a means of contesting deportation, we conclude that § 1187(b) forbids Nose from applying for other forms of relief from deportation." <u>Id.</u> (footnote omitted).

Itaeva argues that because she applied for asylum, unlike the plaintiff in <u>Nose</u>, <u>Nose</u> is readily distinguishable from her situation. Even if we agreed, however, that forms of relief necessary to evaluate or effectuate an asylum claim remain available to VWP participants, it is clear that in the present situation, Itaeva's application for suspension of deportation is unrelated to her asylum claim. Furthermore, the BIA denied her asylum application and she does not appeal its denial. Consequently, in order to sustain Itaeva's claim here, we must conclude that once she filed for asylum and was placed in removal proceedings, the full panoply of remedies to deportation — whether they related to her asylum claim or not — became available to her. We agree, however, with the INS that such an interpretation would render the <u>quid pro quo</u> aspect of the VWP meaningless and would frustrate the clear intent of Congress when it enacted § 1187. Our conclusion is supported by the fact that the BIA interpreted the statute to preclude Itaeva from applying for suspension of deportation under the

relevant statutory provision — a statutory construction to which we owe deference. See Al-Salehi v. INS, 47 F.3d 390, 392 (10th Cir. 1995) ("[I]f the statute is silent or ambiguous with respect to the specific issue . . . we do not simply impose our own construction on the statute, but give due deference to the BIA's interpretation of the INA . . . unless it is arbitrary, capricious, or manifestly contrary to the statute." (quotation omitted)); see also Chevron U.S.A.,Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–45 (1984) (discussing the circumstances under which deference to an agency interpretation is required).

We also reject Itaeva's contention that, merely because the BIA has held that VWP violators must be served with charging documents before proceedings can be initiated, such notice requirement enlarges the scope of remedies available to her. Both cases cited by Itaeva, In re H, 20 I. & N. Dec. 611, 1992 WL 364789 (B.I.A. 1992) and In re L, 20 I. & N. Dec. 553, 1992 WL 249103 (B.I.A. 1992), are narrow decisions dealing only with the proper notice necessary to initiate proceedings against asylum seekers who were either denied admission under the VWP or who overstayed the terms of their admission pursuant to the VWP.

Accordingly, we **DENY** the petition for review and **AFFIRM** the BIA's dismissal of Itaeva's appeal.