In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1209

YVONNE C. WIGGLESWORTH,

*Petitioner,*

*v.*

IMMIGRATION AND NATURALIZATION
SERVICE,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A71-468-728

ARGUED SEPTEMBER 17, 2002—DECIDED FEBRUARY 14, 2003

Before FLAUM, *Chief Judge,* and EASTERBROOK and RIPPLE,
*Circuit Judges.*

RIPPLE, *Circuit Judge.* Yvonne Wigglesworth last en-
tered the United States pursuant to the Visa Waiver Pilot
Program ("VWPP"), which allows visitors from certain
countries to enter the United States without a visa for a
stay of ninety days or less. *See* 8 U.S.C. § 1187. The Im-
migration and Naturalization Service ("INS") instituted
deportation proceedings against Ms. Wigglesworth, but
later realized that it improvidently had commenced those
proceedings because, as a condition of entering under the

VWPP, Ms. Wigglesworth had waived her right to a deportation proceeding. The Immigration Judge ("IJ") agreed and granted the INS' motion to terminate the proceedings, a decision that was affirmed by the Board of Immigration Appeals ("BIA"). Ms. Wigglesworth now appeals and seeks an order from this court to reinstate the proceedings and require the INS to process her application for suspension of deportation. For the reasons set forth in the following opinion, we dismiss the appeal.

# I

# BACKGROUND

## A. Facts

Yvonne Wigglesworth was born in Denmark and is a citizen of Sweden. She has resided in the United States since June 3, 1980, with two interruptions. In 1981, she returned to Sweden for a period of approximately one year to serve a seven-month sentence for trafficking in hashish. She returned to the United States in 1982. After her return, she left the United States only once; in 1990, for a period of three weeks, she visited her ailing mother in Sweden.

Prior to her first departure from the United States in 1981, Ms. Wigglesworth married an United States citizen, Charles Wigglesworth. They have one child, Kristina, born in January 1984.

In 1988, Mr. Wigglesworth filed a Petition for Alien Relative (Form I-130) for his wife. The INS approved this petition on January 27, 1989. In 1990, the Wigglesworths went to an immigration consulting agency called "Servicio Continental" to inquire about adjusting Ms. Wigglesworth's immigration status to that of a lawful permanent

resident. The agency apparently told Ms. Wigglesworth that, in order to complete the application, she first would need to establish that she had entered the United States legally by obtaining a new I-94 departure record to replace the one that was misplaced after her 1982 reentry. Although it is unclear from the record exactly what was communicated to her, Ms. Wigglesworth was left with the impression that she would be able to reenter the United States without a visa pursuant to the VWPP and thereafter pursue an adjustment of status.

Seeing this situation as an opportunity both to obtain the necessary entry documents as well as visit her mother, Ms. Wigglesworth left the United States for Sweden. When she returned to the United States three weeks later, she entered pursuant to the VWPP, which allows visitors from certain countries to enter the United States without a visa and stay for up to ninety days. In order to be admitted under the VWPP, the visitor must waive any right "to contest, other than on the basis of an application for asylum, any action for deportation against the alien." 8 U.S.C. § 1187(b) (1993). Prior to reentering the United States, Ms. Wigglesworth executed a Swedish-language version of form I-790, the Visa Waiver Pilot Program Information Form ("I-790").[1] The form contains a section identified as a "**WAIVER OF RIGHTS**"; it states:

> I hereby waive any and all rights to review of or appeal from an Immigration Officer's determination as to my admissibility, or to contest, other than on the

---

[1] Although there was initially some question concerning whether Ms. Wigglesworth had executed a waiver, after oral argument in this case, the INS submitted a copy of the waiver form actually signed by Ms. Wigglesworth as well as the English language version of the form.

basis of an application for asylum, any action for deportation. Specifically, I am waiving my rights to 1) a hearing before an Immigration Judge to determine my admissibility or deportability; 2) an administrative appeal to the Board of Immigration Appeals; and 3) the judicial review of any or all of the above decisions.

*See* INS Submission of October 10, 2002. The form also contains a section entitled "**CERTIFICATION**," which states in relevant part: "I certify that I have read and understood all the questions and statements on this form." *Id.*[2]

## B. Administrative Proceedings

After entering the United States pursuant to the VWPP, Ms. Wigglesworth filed an I-485 form to adjust her status to that of a lawful resident alien. The following month, Mr. and Ms. Wigglesworth appeared at the Chicago of-

---

[2] Ms. Wigglesworth objects to this court's consideration of the documents submitted by the INS on two grounds: 1) they were not a part of the administrative record below; and 2) the English version of form I-790 is not a certified translation of the Swedish version as required by 8 C.F.R. § 3.33. However, at least some portion of Ms. Wigglesworth's entry papers were examined by the IJ during the immigration hearing, and Ms. Wigglesworth made no objection to the papers at that time. *See* A.R. 165. With respect to the lack of certification for the Swedish form I-790, Ms. Wigglesworth has not presented any interpretation of 8 C.F.R. § 3.33 that suggests it applies to official INS forms. Additionally, if Ms. Wigglesworth believed there were important differences between the English and Swedish versions of the form, she certainly could have brought those to this court's attention. She has not done so.

fice of the INS for an interview on the application. The INS denied her application on the ground that she was excludable from the United States as a result of her controlled substance conviction. The INS issued a show-cause order and a notice of hearing. Ms. Wigglesworth appeared pursuant to notice, and the hearing was continued so that she could obtain counsel and apply for suspension of deportation.

In December 1992, Ms. Wigglesworth appeared with her attorney for the hearing, conceded deportability pursuant to the order to show cause and applied for suspension of deportation. After receiving evidence, the IJ took the case under advisement. While the case was pending before the IJ, the INS filed a motion to terminate the proceedings on the basis that "the District Director exercises sole jurisdiction over determinations of deportability in the cases of aliens who were admitted to the United States pursuant to section 217 of the Act," the VWPP. A.R. 402. Prior to the IJ's ruling on its motion, the INS arrested Ms. Wigglesworth at her home in order to deport her. Ms. Wigglesworth then petitioned the IJ for a stay of deportation pending a decision on the motion to terminate. The IJ granted the stay. Apparently on word that the INS would not abide by the stay issued by the IJ, Ms. Wigglesworth also filed a petition for a writ of habeas corpus in district court. The district court granted the petition and ordered the INS to release Ms. Wigglesworth while the administrative proceedings were pending.

On July 15, 1993, the IJ granted the INS' motion to terminate the deportation proceedings as having been commenced improvidently insofar as the VWPP's regulations required a determination of deportability without commencement of a deportation proceeding. Although the IJ acknowledged that he could not reach the question of the

constitutionality of the VWPP, he believed that, given the facts of the case, "it would be hard to conclude that the respondent knowingly and intelligently waived her right to a hearing when she last entered." A.R. 136 n.6.

Ms. Wigglesworth appealed this order, and the BIA affirmed. It stated:

> On appeal, the respondent argues that the Immigration Judge erred in finding her ineligible for suspension of deportation based upon her entry pursuant to the Visa Waiver Pilot Program ("VWPP"). We agree with the Immigration Judge that she is ineligible for suspension of deportation based upon her VWPP entry. The Immigration and Nationality Act and the applicable regulations clearly indicate that an alien admitted as a Visa Waiver Pilot Program visitor waives any right to contest any action for deportation, other than on the basis of an application for asylum in the United States as provided in section 208 of the Act.

> As the respondent was admitted as a visitor under the VWPP, she waived her right to contest any action for deportation other than asylum. Therefore, we affirm the Immigration Judge's decision finding the adult respondent was barred from applying for suspension of deportation under section 217 of the Act and 8 C.F.R. § 217. Accordingly, we affirm the decision of the Immigration Judge ordering the deportation proceedings terminated.

A.R. 2-3 (footnotes and citations omitted).

Ms. Wigglesworth filed a timely petition for review with this court.

## II

## ANALYSIS

Before this court, Ms. Wigglesworth requests that we vacate the order of the BIA and remand this case to the IJ to complete the proceedings, including a determination of Ms. Wigglesworth's application for suspension of deportation. The INS argues, however, that we cannot consider Ms. Wigglesworth's petition for review for two reasons: 1) Ms. Wigglesworth waived her right to contest her deportation when she entered the country pursuant to the VWPP; and 2) 8 U.S.C. § 1252(g) precludes judicial review of discretionary decisions to "commence proceedings, adjudicate cases, or execute removal orders." We consider these arguments below.

## A.  VWPP

### 1.  Waiver of Rights

The VWPP[3] allows visitors from certain countries to enter the United States without a visa if they meet certain qualifications, such as the alien possesses a "round-trip

---

[3]  When originally instituted, the VWPP was a "pilot" program; it since has been made a permanent program and has been renamed the "Visa Waiver Program." *See* 8 U.S.C. § 1187. Additionally, because the program was instituted prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), it employed the terminology of "deportation" as opposed to "removal." *See id.* However, because Ms. Wigglesworth entered the country pursuant to the program when it was still in its "pilot" stage and prior to the passage of IIRIRA, we maintain the acronym VWPP and the term "deportation."

transportation ticket" and "has been determined not to represent a threat to the welfare, health, safety, or security of the United States." 8 U.S.C. § 1187(a)(5) & (7) (1993). In return for being admitted pursuant to this stream-lined procedure, the alien must waive certain rights, *see Itaeva v. INS*, 314 F.3d 1238, 1239 (10th Cir. 2003); specifically the VWPP provides:

**(b) Waiver of rights**

An alien may not be provided a waiver under the pilot program unless the alien has waived any right—

**(1)** to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or

**(2)** to contest, other than on the basis of an application for asylum, any action for deportation against the alien.

8 U.S.C. § 1187(b) (1993).

Prior to being admitted to this country, Ms. Wigglesworth signed a Swedish-language version of form I-790, which contained an explicit waiver as well as a certification that the signor had read and understood the form. Thus, there is no question that Ms. Wigglesworth waived her rights to "contest" her deportation. Furthermore, there is no question that both in the terminated proceedings before the IJ, as well as in this court, Ms. Wigglesworth seeks to contest her deportation on a basis other than asylum; specifically, she seeks relief by way of suspension of deportation. As two of our sister circuits already have determined, such a challenge is specifically forbidden by the language of the statute. *See Itaeva*, 314 F.3d at 1242; *Nose v. Attorney Gen.*, 993 F.2d 75, 80 (5th Cir. 1993).

Because Ms. Wigglesworth waived her right to contest her deportation except on the basis of asylum, she has waived her right to contest the INS' disposition of her application for suspension of deportation or the termination of her deportation hearing.[4]

---

[4] We do not believe that the Tenth Circuit's decision in *Itaeva v. INS*, 314 F.3d 1238 (10th Cir. 2003), supports the exercise of jurisdiction by a court of appeals in a case such as the one before us. In that case, the petitioner was subject to deportation pursuant to the VWPP; however, as in the present case, the INS instituted deportation proceedings against her as opposed to simply deporting her pursuant to the VWPP. Not only was a full hearing held before an IJ, who determined that suspension of deportation was not available, but also the BIA affirmed and issued a final order of deportation. When Itaeva appealed to the Tenth Circuit, that court rejected the INS' argument that the court lacked jurisdiction based on § 1187(b)(2). It stated: "As noted above, under the transitional rules which apply here, this court has subject matter jurisdiction to review a final order of deportation. If Congress had intended to deprive us of jurisdiction over a VWP visitor's § 1187(b)(2) claim (regarding deportation) it could have specified that the alien had waived the right to *appeal* as it did in § 1187(b)(1) (regarding admissibility at port of entry)." *Id.* at 1241. We believe this language has to be read in the context of the situation before the court, that is, that the INS had instituted proceedings, that the proceedings had concluded before the IJ, that the decision of the IJ had been appealed and that the BIA had issued a final order of deportation. Therefore, for cases which were prosecuted and culminated in a final order of deportation, *Itaeva* holds that § 1187(b)(2) does not supersede other provisions of the immigration laws that channel appeals of final deportation orders to the courts of appeals. In essence, the INS waives the petitioner's VWPP "waiver"

(continued...)

## 2. Constitutional Challenge

Ms. Wigglesworth also presents a constitutional challenge to the VWPP. Specifically, she argues that "it violates [her] rights to due process by depriving her of a hearing where she has not knowingly or intelligently waived such hearing on her right to remain in the [United States]." Petitioner's Br. at 19. We must determine whether this claim is properly before us.

### a.

This court has acknowledged that, when judicial review is otherwise foreclosed by statute, jurisdiction remains in this court to raise substantial constitutional questions.

---

[4] (...continued)

when it prosecutes deportations to the stage of a final order of deportation.

If we read the Tenth Circuit's opinion too narrowly and, indeed, it interprets § 1187(b)(2) as allowing all VWPP deportees to seek review in the courts of appeals, we respectfully disagree with this conclusion. We believe that the language of § 1187(b)(2) applies to any challenge ("contest") to an alien's deportation, regardless of whether that challenge is directed to an administrative agency or a court of appeals. There is no language in the statute to suggest that "contest" should be limited to administrative adjudications. Indeed such a reading would frustrate the statutory purpose of streamlining both the admission and deportation of those entering the country under the VWPP. Finally, such an interpretation would be difficult to administer in light of the general prohibition against presenting arguments on appeal that have not first been presented to the agency with the authority to determine the claim. *See, e.g., Ambati v. Reno,* 233 F.3d 1054, 1062 (7th Cir. 2000).

*See, e.g., Singh v. Reno,* 182 F.3d 504, 509 (7th Cir. 1999). In *Singh,* we reiterated our holding in *LaGuerre v. Reno,* 164 F.3d 1035 (7th Cir. 1998):

> As we explained in *LaGuerre,* direct review in the courts of appeals remains an option for aliens wishing to challenge their deportation on constitutional grounds. Thus, "judicial review is curtailed as Congress intended, but enough of a safety valve is left to enable judicial correction of bizarre miscarriages of justice."

*Singh,* 182 F.3d at 509 (quoting *LaGuerre,* 164 F.3d at 1040). As we noted, this "safety valve" exists in instances in which "judicial review is curtailed." We must evaluate, therefore, whether Ms. Wigglesworth had a means of challenging the deportation order issued by the INS under the VWPP.

Although the record is unclear exactly as to when the INS determined that Ms. Wigglesworth was deportable and issued a final order of deportation pursuant to the VWPP, it made this determination at least prior to the date that she was taken into custody for purposes of deportation, February 17, 1993. Consequently, we look to the judicial review provisions in effect at that time, specifically 8 U.S.C. § 1105a, to determine what means were available to Ms. Wigglesworth to challenge her deportation order.[5]

---

[5] The same law applies if we were to consider the BIA's order of December 27, 2001, affirming the IJ's termination of proceedings, as the final order of deportation. For aliens who were placed in deportation proceedings before April 1, 1997, and whose final orders of deportation were entered more than 30 days after the date of the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

(continued...)

**b.**

In general, the former § 1105a sets forth the judicial review procedures only for "final orders of deportation" issued pursuant to administrative procedures contained in 8 U.S.C. § 1252(b), specifically an administrative hearing before an IJ and an appeal to the BIA. However, a determination that an individual was deportable under the VWPP was a determination made by the district director of the INS—outside of the typical proceedings before an IJ. Indeed, the regulations implementing the VWPP make clear that the determination is made without referral of the alien to immigration proceedings:

> (c) Determination of deportability. An alien who has been admitted to the United States under the provisions of section 217 of the Act and of this part who is determined by an immigration officer to be deportable from the United States under one or more of the deportation grounds listed in section 241 of the Act shall be removed from the United States to his or her country of nationality or last residence. Such removal for deportation shall be determined by the

---

[5] (...continued)
("IIRIRA"), October 30, 1996, the transitional rules established by IIRIRA apply. The transitional rules provide for judicial review as it existed before IIRIRA was passed, subject to certain exceptions. (One of those exceptions, 8 U.S.C. § 1252(g) could apply to Ms. Wigglesworth. That provision will be discussed *infra* at Part II.B.). Here, Ms. Wigglesworth was placed in a deportation proceeding prior to the passage of IIRIRA, and the termination of those proceedings was affirmed by the BIA on December 27, 2001. Therefore, we would look to pre-IIRIRA law, 8 U.S.C. § 1105a, to determine the proper method for her to raise a constitutional challenge to her proceedings.

district director who has jurisdiction over the place where the alien is found, and *shall be effected without referral of the alien to an immigration judge for a determination of deportability*, except that an alien admitted as a Visa Waiver Pilot Program visitor who applies for asylum in the United States must be referred to an immigration judge for a determination of deportablity.

8 C.F.R. § 217.4 (1993) (emphasis added).

The former § 1105a, however, acknowledged the possibility that an individual could be under the threat of deportation from an order that did not originate through proceedings before an IJ. The statute therefore provided that the procedure set forth therein was "the sole and exclusive procedure for the judicial review of all final orders of deportation made . . . pursuant to administrative proceedings under section 1252(b) . . . *except that*—. . . (10). . . any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas proceedings." 8 U.S.C. § 1105a(a)(10) (1993) (emphasis added). Therefore, under the former § 1105a(a)(10), aliens held pursuant to any order of deportation, regardless of how or from whom the order issued, could employ habeas as a means of challenging the deportation.[6] Because the determination that Ms. Wigglesworth was deportable was not made through deportation proceedings before an IJ pursuant to § 1252(b), her remedy for purposes of challenging that order was through a writ of habeas corpus as contemplated by 8 U.S.C. § 1105a(a)(10).

---

[6] Indeed, Ms. Wigglesworth invoked § 1105a(a)(10) when she brought the habeas petition to challenge her detention in 1993. *See* A.R. 392.

### c.

Ms. Wigglesworth recognizes the possibility that a district court, as opposed to a court of appeals, is the proper forum to air her constitutional challenge. She therefore urges this court to transfer her petition to a district court pursuant to 28 U.S.C. § 1631 if we conclude that she has raised her arguments in the wrong forum.

Section 1631 states:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. Although § 1631 is not cast in discretionary terms ("the court *shall* . . . transfer"), this court has stated that "there is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed . . . ." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999).

A court is authorized to consider the consequences of transfer before deciding whether to transfer; that is implicit in the statute's grant of authority to make such a decision, and implies in turn that the court can take a peek at the merits, since whether or not the

> suit has any possible merit bears significantly on whether the court should transfer or dismiss it.

*Id.* at 610-11 (internal citation omitted). We, therefore, "take a peek" at the merits of Ms. Wigglesworth's constitutional claim to see if transferring to the district court is "in the interest of justice."

Ms. Wigglesworth argues that the VWPP violates her rights to due process of law and points to cases from the Supreme Court and this court that establish that aliens—even those who have entered this country illegally—have the right to a fair hearing prior to being deported. Because this right to a fair hearing is a constitutional right, she continues, any waiver of that right has to be knowing and voluntary. She further maintains that, when she waived her right to a hearing before an IJ, her waiver was not knowingly made. Consequently, in her view, the VWPP, as applied to these circumstances, violates her rights to due process. Ms. Wigglesworth points to *Nose* in support of her argument.

In *Nose*, the Fifth Circuit considered the validity of Nose's waiver pursuant to the VWPP. It began its analysis by observing that "[g]enerally, even aliens who have entered the United States unlawfully are assured the protection[] of the fifth amendment due process clause, including the right to a hearing before an immigration judge before being deported." *Id.* at 78-79 (internal quotation marks and citations omitted). Furthermore, it continued, "[a]lthough due process rights may be waived, such a waiver must be made knowingly and voluntarily." *Id.* at 79 (internal citations omitted). The Fifth Circuit then looked to three primary factors to determine whether Nose's waiver had been made knowingly: "(1) the party's background and experience; (2) the clarity of the written waiver agreement; and (3) whether the party was repre-

sented by or consulted with an attorney." *Id.* Applying these factors, the Fifth Circuit rejected the due process argument because Nose was highly educated, the written waiver was very clear and Nose had consulted with counsel prior to entering the country through the VWPP. *See id.* at 80.

Ms. Wigglesworth argues that the standards set forth in *Nose* should be applied to evaluate her waiver and, under those standards, this court cannot conclude that her waiver was knowingly made. We disagree. Assuming that the knowing and voluntary standard applies to Ms. Wigglesworth's waiver, we do not believe that the *Nose* factors suggest that Ms. Wigglesworth's waiver was constitutionally infirm. Ms. Wigglesworth had a high school education, had owned her own business and had traveled extensively earlier in her life. As well, the waiver form was exceptionally clear that, in signing the form, Ms. Wigglesworth was waiving her rights to a hearing before an IJ, an administrative appeal to the BIA and judicial review of the administrative decision. Even in the absence of consultation with an attorney,[7] we do not believe that these factors call into question the validity of Ms. Wigglesworth's waiver.

Ms. Wigglesworth's claim also fails for another reason. This court has held that, in order to prevail on a due process claim, the alien must establish prejudice resulting from the violation. *See Roman v. INS*, 233 F.3d 1027, 1033 (7th Cir. 2000). When deportation proceedings were commenced against Ms. Wigglesworth, however, she conceded

---

[7] As noted above, Ms. Wigglesworth did receive advice from an immigration consulting service prior to departing for Sweden; however, neither the credentials of the consultant nor the precise nature of the advice given are contained in the record.

deportability. Ms. Wigglesworth's complaint, therefore, is not a lack of due process with respect to the determination of deportability, but the fact that she was not afforded the opportunity to present, or receive a determination concerning, her application for discretionary relief. However, when Ms. Wigglesworth entered pursuant to the VWPP, she not only waived her right to a deportation hearing, she also waived any rights that she had to apply for non-asylum forms of relief from deportation. *See Nose*, 993 F.3d at 80; *Itaeva*, 314 F.3d at 1242.

Essentially, Ms. Wigglesworth's complaint is that she never was warned that her entry and waiver under the VWPP would preclude her from applying for and obtaining discretionary relief. We cannot accept this submission. The waiver language contained on the form is sufficiently clear in informing the alien that asylum is the only available avenue to changing one's status if admitted under the VWPP.

Because we do not believe that Ms. Wigglesworth can prevail on her constitutional challenges to the VWPP, we do not believe that it is in the interest of justice to transfer this appeal to the district court for consideration on habeas review.[8]

## B.  8 U.S.C § 1252(g)

Apart from the fact that Ms. Wigglesworth waived her rights to contest her deportation, we believe that there is an equally compelling reason to dismiss her claims. 8 U.S.C. § 1252(g) is the single provision of IIRIRA that, at the time of its passage, applied "without limitation to claims arising from all past, pending, or future exclu-

---

[8] We express no opinion concerning whether the other requirements for a § 1631 transfer have been met.

sion, deportation, or removal proceedings." *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 477 (1999) ("*AAADC*") (internal quotation marks and citations omitted). Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

In *AAADC*, the Supreme Court rejected "the unexamined assumption that § 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" *AAADC*, 525 U.S. at 482. Instead, the Court held that § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (quoting 8 U.S.C. § 1252(g) and adding emphasis).

In *Gomez-Chavez v. Perryman*, 308 F.3d 796 (7th Cir. 2002), this court examined what actions fall within § 1252(g)'s prohibition. In that case, Gomez-Chavez was deported from the United States, later reentered the country illegally and married an American citizen. Gomez-Chavez then filed a form I-485 to adjust his status to that of a lawful permanent resident based on his marriage. When Gomez-Chavez arrived at the adjustment-of-status interview, the INS representative discovered that Gomez-Chavez had reentered the country illegally following his deportation. Pursuant to 8 U.S.C. § 1231(a)(5), the INS invoked its prior deportation order and sought to deport Gomez-Chavez without a hearing. Shortly thereafter, Gomez-Chavez filed an I-212 application with the INS for permis-

sion to reapply for admission to the United States after removal. When Gomez-Chavez arrived in this court, we considered and then addressed the following argument:

> Gomez-Chavez's primary claim is that the INS is now improperly refusing to adjudicate his I-212 application for waiver of inadmissibility. But this argument fits squarely within the steps covered by the prohibition on judicial review found in 8 U.S.C. § 1252(g). Under § 1252(g), courts are barred from reviewing discretionary decisions to "commence proceedings, adjudicate cases, or execute removal orders." These strict limitations apply not only to the Attorney General's positive actions, but also to his refusals to take action. An alien attempting to achieve judicial review of such discretionary measures may not avoid the § 1252(g) bar by the simple expedient of recharacterizing a claim as one challenging a refusal to act.

*Id.* at 800 (internal quotation marks and citations omitted).

Here, by way of this appeal, Ms. Wigglesworth seeks an order that the INS recommence deportation proceedings for the purpose of adjudicating her application for discretionary relief. As noted in *Gomez-Chavez*, the ban in § 1252(g) applies with equal force to the Attorney General's refusals to act. Consequently, the determination of the Attorney General's designee to cease proceedings and not to adjudicate Ms. Wigglesworth's application for discretionary relief is barred by § 1252(g) just as a decision to commence proceedings or to adjudicate the application for relief would be unreviewable.[9]

---

[9] As noted above, for cases in which judicial review is foreclosed by statute, this court has preserved jurisdiction to review substantial constitutional questions and to correct bizarre

(continued...)

## Conclusion

As set forth above, Ms. Wigglesworth waived both her right to a hearing on her deportation and her right to apply for discretionary relief. Additionally, under 8 U.S.C. § 1252(g), this court lacks jurisdiction to review the final order of the BIA affirming the IJ's termination of proceedings. The petition for review is, therefore, dismissed.

DISMISSED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[9] (...continued)
miscarriages of justice. *See supra* at Part II.A.2.a. However, as explained earlier in this opinion, Ms. Wigglesworth has not presented a substantial constitutional question for review.

---