**Juana Cerpa MENDOZA, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 92–70469.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 16, 1993.[*]

Decided Feb. 7, 1994.

---

[*] The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Enrique Ramirez, San Francisco, California, for the petitioner.

Stuart M. Gerson, Assistant Attorney General, and Richard M. Evans, United States Department of Justice, Washington, DC, for the respondent.

Before: WALLACE, Chief Judge, GARTH,** and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Juana Cerpa Mendoza petitions for review of an order from the Board of Immigration Appeals (BIA). The BIA affirmed the finding of an immigration judge (IJ) that Mendoza was deportable under section 241(a)(2)(A)(i) of the Immigration and Naturalization Act, 8 U.S.C. § 1251(a)(2)(A)(i).[1] We deny the petition.

## I.

Mendoza is a 44–year old native and citizen of Mexico. Her husband to whom she has been married for 29 years is now a lawful permanent resident alien. Two of her children are United States citizens; the remaining six are now lawful permanent resident aliens. In 1975, Mendoza entered the United States to find work, without inspection and by means of a smuggler. In March of 1979, she left the United States for three days to visit her parents who were ill. Mendoza reentered the United States without inspection, again by means of a smuggler. On September 24, 1986, she was convicted in California state court of welfare fraud committed between November 1, 1981 and March 31, 1986. She was sentenced to state prison for two years.

** Hon. Leonard I. Garth, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. Section 241(a)(2)(A)(i) provides, "Any alien who is convicted of a crime involving moral turpitude committed within five years after the date of entry, and either is sentenced to confinement or is confined therefor in a prison or correctional institution for one year or longer, is deportable." 8 U.S.C. § 1251(a)(2)(A)(i).

Shortly after her release from prison, the INS charged her with deportability for having been convicted of a crime of moral turpitude committed within five years of entry and sentenced to prison for one or more years. 8 U.S.C. § 1251(a)(2)(A)(i). The IJ found her deportable. The BIA affirmed. Mendoza now seeks to terminate deportation proceedings so that she may apply for discretionary relief. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a).

## II.

The primary issue before the court is whether Mendoza's return to the United States in March of 1979 after a three-day departure constituted an "entry" within the meaning of section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13).[2] We hold that her return did constitute an entry.

Mendoza relies heavily on *Rosenberg v. Fleuti,* 374 U.S. 449, 460–63, 83 S.Ct. 1804, 1811–12, 10 L.Ed.2d 1000 (1963) to argue that her return did not constitute an entry. In *Fleuti,* the petitioner was a lawful permanent resident alien who had lived in the United States for four years when he crossed the Mexican border for a several hour visit. The INS moved to deport him after his return. The Court held that a return to the United States does not count as an entry if the return follows a foreign excursion that is "innocent, casual, and brief." *Fleuti,* 374 U.S. at 461, 83 S.Ct. at 1811. The Court explained that a lawful permanent resident alien should be protected "from unsuspected risks and unintended consequences of such a wholly innocent action." *Fleuti,* 374 U.S. at 462, 83 S.Ct. at 1812.

Mendoza also relies on the fact that the *Fleuti* doctrine has been extended to certain

2. Section 101(a)(13) provides that the term "entry" means "any coming of an alien into the United States, from a foreign ... place ..., *except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States* for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign ... place ... was not intended." 8 U.S.C. § 1101(a)(13) (emphasis supplied).

groups of illegal aliens. Specifically, Congress expanded the scope of the doctrine to include those seeking suspension of deportation, 8 U.S.C. § 1254(b)(2),[3] and those seeking legalization, 8 U.S.C. § 1255a(a)(3)(B).[4]

The INS responds that any departure from the United States, no matter how fleeting or involuntary, yields a true entry when made by an alien other than a lawful permanent resident. Barring a congressional mandate, such as 8 U.S.C. §§ 1254(b)(2) and 1255a(a)(3)(B), the *Fleuti* doctrine applies only to lawful permanent resident aliens. 8 U.S.C. § 1101(a)(13).

■ We review de novo the BIA's construction of the definition of "entry" set forth in section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13). *Ayala–Chavez v. INS*, 944 F.2d 638, 641 (9th Cir.1991). We show considerable deference, however, to the BIA's interpretation. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Mahini v. INS*, 779 F.2d 1419, 1420 (9th Cir.1986).

We agree with the BIA's interpretation. First, Congress explicitly defined the term "entry" so as to extend the *Fleuti* exception only to lawful permanent resident aliens. 8 U.S.C. § 1101(a)(13). The language of the statute is plain. Thus, the intent of Congress is clear. *Ardestani v. INS*, ── U.S. ──, ──, ──, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (stating that the plain language of the statute expresses congressional intent except in "rare and exceptional circumstances"). Accordingly, we must effectuate that congressional intent by declining to read into the statutory definition of "entry" an additional exception for illegal aliens, such as Mendoza, who seek to terminate deportation proceedings in order to apply for discretionary relief. *See INS v. Hector*, 479 U.S. 85, 88, 107 S.Ct. 379, 381, 93 L.Ed.2d 326 (1986) (per curiam) (declining to expand a definition

"[b]ecause we find the plain language of the statute so compelling"); *De Valle v. INS*, 901 F.2d 787, 789 (9th Cir.1990) ("We need look no further than the plain language of this statute....").

Second, if Congress wanted to extend the *Fleuti* doctrine to aliens seeking to terminate deportation proceedings, it would have done so. Congress did amend 8 U.S.C. § 1101(a)(13) to codify the *Fleuti* holding. Congress did also amend 8 U.S.C. § 1254 to extend the *Fleuti* doctrine to aliens seeking suspension of deportation. In addition, Congress amended 8 U.S.C. § 1255a to extend the doctrine to aliens seeking legalization. But, Congress has never indicated that the doctrine should be extended to illegal aliens seeking to terminate deportation proceedings so that they may apply for discretionary relief. *See Leal–Rodriguez v. INS*, 990 F.2d 939, 947 (7th Cir.1993) (holding that a lawful permanent resident alien who entered without inspection does not fall within the scope of *Fleuti* because Congress has never indicated an intention to grant this relief to such an alien).

Finally, to the extent that the "entry" issue is an open question to which Congress has never provided a definitive answer, we must defer to the BIA. Congress has entrusted the BIA with the administration of the Act. Therefore, we should not substitute our own construction for that of the BIA where the BIA's construction is reasonable. *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782.

### III.

■ The other issue before the court is whether Mendoza was denied equal protection under the Fifth Amendment Due Process Clause when Congress limited the *Fleuti* exception to lawful permanent resident aliens, 8 U.S.C. § 1101(a)(13), aliens seeking suspension of deportation, 8 U.S.C. § 1254(b)(2), and aliens seeking legalization,

---

**3.** Section 244(b)(2) provides, "An alien shall not be considered to have failed to maintain continuous physical presence in the United States ... *if the absence from the United States was brief, casual, and innocent* and did not meaningfully interrupt the continuous physical presence." 8 U.S.C. § 1254(b)(2) (emphasis supplied).

**4.** Section 245A(a)(3)(B) provides, "An alien shall not be considered to have failed to maintain continuous physical presence in the United States ... *by virtue of brief, casual, and innocent absences from the United States.*" 8 U.S.C. § 1255a(a)(3)(B) (emphasis supplied).

338

8 U.S.C. § 1255a(a)(3)(B). We hold that Mendoza was not denied equal protection.

Mendoza argues that Congress is treating similarly situated individuals differently. For example, an illegal alien who departs for a very brief time and later seeks suspension of deportation or legalization is deemed not to have entered. But, an illegal alien who departs for an equally brief time and later seeks to terminate deportation proceedings so that she may apply for discretionary relief is deemed to have entered.

Again, we disagree with Mendoza. First, "[f]ederal authority in the areas of immigration and naturalization is plenary." *Sudomir v. McMahon*, 767 F.2d 1456, 1464 (9th Cir. 1985). In *Fleuti*, the Court held explicitly that "Congress unquestionably has the power to exclude all classes of undesirable aliens from this country." *Fleuti*, 374 U.S. at 461, 83 S.Ct. at 1811. Furthermore, the judiciary cannot substitute its own judgment for that of the Congress. *Fiallo v. Bell*, 430 U.S. 787, 798, 97 S.Ct. 1473, 1481, 52 L.Ed.2d 50 (1977); *see Fiallo*, 430 U.S. at 799–800, 97 S.Ct. at 1482 (holding that equal protection is not violated by legislation granting immigration preference status to mothers but not fathers of illegitimate children); *Mathews v. Diaz*, 426 U.S. 67, 83–84, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478 (1976) (refusing to strike down legislation denying Medicare eligibility to aliens who have not been admitted to permanent residence or who have not resided in the United States for at least five years).

Second, federal classifications which distinguish among groups of aliens are valid unless "wholly irrational." *Sudomir*, 767 F.2d at 1464. It cannot be said that Congress's decision to limit the *Fleuti* doctrine to these three categories of aliens was "wholly irrational." Rather, Congress acted rationally to balance competing objectives. On the one hand, there is the need to protect some immigrants from the "unsuspected risks and unintended consequences" of briefly departing the country. *See Fleuti*, 374 U.S. at 462, 83 S.Ct. at 1812. On the other hand, there is the need to control the numerical inflow of immigrants and exclude "undesirable aliens." *See id.* at 461, 83 S.Ct. at 1811.

We conclude that the BIA correctly determined that Mendoza's return following a three-day departure did constitute an entry. Accordingly, her date of entry was 1979. Thus, Mendoza was convicted of committing a crime of moral turpitude within five years of entering the United States and served one year or more in prison. Mendoza is deportable under section 241(a)(2)(A)(i) of the Act, 8 U.S.C. § 1251(a)(2)(A)(i).

PETITION DENIED.