**Denis POLIZIO, Petitioner,**

v.

**Carol JENIFER, District Director of the Immigration and Naturalization Service, Respondent.**

**Case No. 02–CV–71849.**

United States District Court, E.D. Michigan, Southern Division.

Aug. 1, 2002.

---

Marshal E. Hyman, Marshal Hyman Assoc., Troy, MI, for Polizio.

L. Michael Wicks, Assist. U.S. Atty. Chief, Civ. Div., Detroit, MI, for Jenifer.

***ORDER VACATING PETITIONER'S STAY OF DEPORTATION AND MEMORANDUM AND ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS***

COHN, District Judge.

### I. Introduction

This is an immigration habeas case under 28 U.S.C. § 2241. Petitioner Denis Polizio (Petitioner) is a citizen of Albania and Italy and currently in the custody of the Immigration and Naturalization Service. (INS). Petitioner filed an application for a writ of habeas corpus requesting that the Court (1) assume jurisdiction over

his case, (2) grant him bond, and (3) order the INS to release him from custody. Petitioner's deportation has been stayed pending a ruling on the petition.

Now before the Court for decision is the application and an Emergency Motion for Immediate Release From Custody. For the reasons which follow, the application must be dismissed and the motion for immediate release must be denied as moot.

## II. Background

Petitioner was born on October 5, 1979 in Albania. On March 9, 1997, at the age of 17, Petitioner entered the United States on an Italian passport with his family under the Visa Waiver Pilot Program (VWPP), 8 U.S.C. § 1187, which allows citizens of certain countries with round trip tickets to enter the United States as a tourist for 90 days *without* a visa. Thus, Petitioner was obligated to leave the United States no later than June 9, 1997. Petitioner did not leave the country upon the expiration of the 90 days.

Almost five years later, on February 14, 2002, Petitioner "had contact" with the St. Clair County Sheriff's Office who called the INS after realizing Petitioner had overstayed his visit in the United States. The INS took Petitioner into custody the same day. Petitioner the same day filed a request for an asylum hearing. On March 14, 2002, an immigration judge denied Petitioner's request for a bond determination apparently for lack of jurisdiction. On April 4, 2002, Petitioner applied for parole, which was not granted. On May 8, 2002, Petitioner filed the application before the Court. The same day, the Court entered an order directing service of the petition and staying Petitioner's deportation until further order of the Court.

On May 16, 2002, an immigration judge issued an order terminating Petitioner's asylum proceedings because Petitioner stated he no longer wished to pursue the application for asylum. On July 3, 2002 Petitioner filed a motion for immediate release.

## III. Analysis

### A. The VWPP

8 U.S.C. § 1187 sets forth the requirements for the VWPP, stating:

> (a) the Attorney General and the Secretary of State are authorized to establish a pilot program (hereinafter in this section referred to as the "pilot program") under which the requirement of paragraph (7)(B)(I)(II) of section 1182(a) of this title [requiring an alien to obtain a nonimmigrant visa] may be waived by the Attorney General and the Secretary of State ... in the case of an alien who meets the following requirements: (1) Seeking entry as tourist for 90 days or less

> The alien is applying for admission during the pilot program period (as defined in subsection (e)) as a nonimmigrant visitor (described in section 1101(a)(15)(B) of this title) for a period not exceeding 90 days.

> . . . . .

> (3) Executes immigration forms

> The alien before the time of such admission completes such immigration forms as the Attorney General shall establish.

> . . . . .

> (b) **Waiver of rights**

> An alien may not be provided a waiver under the pilot program unless the alien has waived any right—

> (1) to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or

**(2) to contest, other than on the basis of an application for asylum, any action for deportation against the alien.**

(emphasis added).

INS regulations promulgated pursuant to the VWPP state in relevant part:

An alien who has been admitted to the United States under the provisions of [the VWPP] who is determined by an immigration officer to be deportable from the United States ... shall be removed from the United States to his or her country of nationality or last residence. **Such removal for deportation shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability.** ...

8 C.F.R. § 217.4(c) (1997) (emphasis added).

The VWPP was first adopted under section 313(a) of Immigration Reform and Control Act of 1986 ("1986 Act"), codified as 8 U.S.C. § 1187 (1992), which amended section 217 of the Immigration and Nationality Act of 1952. The legislative history to the 1986 Act indicates that Congress intended the VWPP to promote better relations with this country's close allies and to encourage tourism by establishing a system of reciprocity with respect to visa requirements. *See* H.R.Rep. No. 99–682, 99th Cong., 2d Sess., pt. I, at 50 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5654. The waiver of the visa requirement serves to minimize administrative burdens by alleviating "vast amounts of paperwork" and thereby allowing United States consular offices to focus on higher priority responsibilities. *Id.* However, because the VWPP raises the potential for abuse, "the program is linked to the establishment of an arrival-departure system for the continued screening of immigrants as well as nonimmigrants." *Id.*

### B. Petitioner's Claims

#### 1.

Petitioner claims that his continued detention, the denial of bond, and the pending deportation violate his right to due process. Because Petitioner brings his case under the Court's habeas jurisdiction, the focus is on whether Petitioner is being held by the INS in violation of his constitutional rights. *See* 28 U.S.C. § 2241. Thus, to the extent that Petitioner requests the Court to exercise jurisdiction over his case, the Court does so for the purpose of determining the scope of Petitioner's constitutional rights and determining whether they are being violated.

 Generally, "[a]liens are entitled to a full and fair hearing before being deported." *United States v. Nicholas–Armenta,* 763 F.2d 1089, 1090 (9th Cir.1985). An alien, however, may relinquish his right to due process. *See Boddie v. Connecticut,* 401 U.S. 371, 378–79, 91 S.Ct. 780, 28 L.Ed.2d 113, (1971) ("the hearing required by due process is subject to waiver"); *United States v. Villa–Fabela,* 882 F.2d 434, 440–41 (9th Cir.1989) (finding that alien's waiver of right to appeal immigration judge's decision, which was knowingly and intelligently made, barred collateral attack of deportation order).

#### 2.

 Here, Petitioner undeniably waived his right to a deportation hearing upon entry into this country except for seeking asylum. The prerequisites for admission under the VWPP are very specific. Among the enumerated conditions are that the alien's period of entry may not exceed 90 days. *See* § 1187(a)(1), 8 C.F.R. § 217.2(a)(2) (1992). No extensions of this period, except in the case of emergency,

are allowed, 8 C.F.R. § 217.3(a)-(b) (1992). Moreover, and most importantly, entry under the VWPP is contingent upon the explicit waiver of certain rights. Section 1187, quoted above, states that "[a]n alien may not be provided a waiver under the pilot program unless the alien waived any right ... to contest, other than on the basis of an application for asylum, any action for deportation against the alien." 8 U.S.C. § 1187(b)(2). This language was adapted and incorporated into the 2–page form which Petitioner signed upon his entry into this country. The form clearly states that the alien may be immediately deported should he or she fail to maintain his or her "status and depart within the period of authorized stay."

Here, Petitioner signed the VWPP Information Form in which he agreed to waive any right to contest his deportability under the VWPP, and certified that he had read and understood the form. It undisputed that plaintiff violated the terms of his stay by remaining in this country beyond the 90 day period.

Petitioner has therefore received all of the process to which he is entitled. He was given the opportunity to seek asylum and chose not to. This is the end of his due process rights. He waived all other rights. He has no right to be released on bond or to have a hearing prior to his deportation. Although Petitioner now claims that because he was a minor and the waiver was not in his native language, there is a question as to whether he could have knowingly and voluntarily waived his rights, Petitioner's argument lacks merit. He does not claim that he did not understand the from or that his agreement to leave after 90 days was involuntary. Petitioner appears to claim that simply because he was seventeen, he could not have validly waived his rights. Petitioner's unsupported allegations in his petition are insufficient to support a claim that the waiver he signed was invalid. He entered the United States under the clear mandates of the VWPP, but apparently had no intention of leaving.

3.

Petitioner also claims a due process right to live with his family and foster familiar relationships, that his detention violates international law, and that his detention implicates his fundamental right to privacy. These claims lack merit. Petitioner's arguments ignore his status; that is, that he entered the United States under the VWPP and is bound by its terms.

4.

█ Moreover, even assuming that Petitioner has a due process right against mandatory detention, this right has not been violated. Petitioner is being held under 8 U.S.C. § 1231(a), which provides generally for the detention of aliens pending removal. In *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) the Supreme Court interpreted that statute as allowing the INS to detain an alien pending removal for six months and for longer if the government can demonstrate a substantial likelihood of removal in the future.

Here, Petitioner has only been in custody since February 14, 2002. His deportation was delayed due to his application for asylum, which he abandoned, and this Court's order staying deportation. Upon entry of this Memorandum and Order dismissing his application and lifting the stay, his deportation is imminent. Thus, Petitioner is not being held in violation of *Zadvydas*.

5.

The Court is not unsympathetic to Petitioner's situation. However, Petitioner entered the United States without a visa under the VWPP and is bound by its re-

quirements. While Petitioner may not like that his entry under the VWPP came with a waiver of rights, he received the benefits of the VWPP—namely, entering this country without a visa. He must now bear the consequences of having violated the terms of his agreement. Petitioner voluntarily entered the United States and voluntarily waived his rights to challenge any aspect of his deportation except to seek asylum. The VWPP explicitly permitted him to stay in this country for 90 days. He did not leave within the specified amount of time.

However, as counsel for Respondent noted at the hearing on July 31, 2002, Petitioner may apply for a waiver of the statutory requirement that Petitioner cannot return to the United States for 10 years following deportation. *See* § 1182(a)(9)(A)(ii)(I) and *see* § 1182(a)(9)(A)(iii) (noting that Attorney General has discretion to waive the 10 year ban on reentry). Petitioner is strongly encouraged to apply for such a waiver. Although Petitioner has been in the United States unlawfully, he entered the United States at the age of 17, has not committed any crimes here, and has apparently conducted himself without a blemish. He is engaged to marry a United States citizen. He states that he has many friends and family in the Detroit area supportive of him. Such factors would weigh in favor of a waiver to allow Petitioner to reenter the United States shortly after his deportation.

### IV. Conclusion

Petitioner has failed to show a violation of his limited constitutional rights. The application for writ of habeas corpus is DISMISSED. Petitioner's emergency motion for immediate released is DENIED AS MOOT. The order staying Petitioner's deportation, entered May 8, 2002, is VACATED.

SO ORDERED.