ORDER
 

 ZILLY, District Judge.
 

 Background
 

 The Petitioner, Anuj Blake Handa, M.D. (“Dr.Handa”), is a citizen of the United Kingdom. Petitioner’s Reply, docket no. 13, Exhibit 1, Handa Decl. ¶ 1. Dr. Handa entered the United States at New York City on March 2, 2003, under the Visa Waiver Program (“VWP”).
 
 Id.
 
 at ¶ 2. The VWP allows citizens of designated, countries to enter the United States in a visitor’s status without first obtaining a non-immigrant visa.
 
 See
 
 8 U.S.C. § 1187. The Attorney General has designated a list of countries whose citizens may participate in the VWP, which includes the United Kingdom.
 
 See
 
 8 C.F.R. § 217.2(a). Citizens of the designated countries may enter the United States in a visitor’s status by presenting a passport and completing a I-94W Nonimmigrant Visa Waiver Arrival/Departure form.
 
 Id.
 
 § 217.2(b)(1). Individuals who enter the United States un
 
 *MCDXI
 
 der the VWP, are allowed to remain for a period of up to 90 days. 8 U.S.C. § 1187(a)(1).
 

 Dr. Handa executed a Form I-94W Nonimmigrant Visa Waiver Arrival/Departure Form, which provided as follows:
 

 WAIVER OF RIGHTS: I hereby waive any rights to review or appeal of an immigration officer’s determination as to my admissibility, or to contest, other than on the basis of an application for asylum, any action in deportation.
 

 í¡s
 
 %
 
 $
 

 Warning: .... You are authorized to stay in the U.S. for 90 days or less.... Violation of these terms will subject you to deportation.
 

 Government Appendix, docket no. 10, p. 47; Governments’ Motion to Dismiss, docket no. 9, Exhibit 1, p. 2. Dr. Handa’s 90-day entry period under the VWP expired on or about June 2, 2003. It is undisputed that Dr. Handa overstayed the 90-day period.
 

 Dr. Handa asserts that he planned to leave in May, before the 90-day period expired, after attending a conference in Toronto, Canada. Petitioner’s Reply, docket no. 13, Exhibit 1, Handa Decl. ¶ 2. However, Dr. Handa admits that he planned to return to the United States in order to prepare for his medical board examinations that were held on July 11, 2003.
 
 Id.
 
 Due to the SARS outbreak in Toronto, the conference was cancelled, and Dr. Handa remained in the United States.
 
 Id.
 
 at ¶ 3. Dr. Handa also alleges that he planned to leave before his 90 day entry period expired, but he fell ill at the end of May and was diagnosed with pancreatitis on June 5, 2003.
 
 Id.
 
 at ¶ 4. He alleges that he was house bound and unable to travel.
 
 Id.
 
 Nevertheless, Dr. Handa took his medical board exam on July 11, 2003.
 
 Id.
 

 Dr. Handa contends that before returning to England, he planned a three-day trip to Vancouver, British Columbia.
 
 Id.
 
 Dr. Handa purchased a return ticket to the United Kingdom, and was set to depart on July 22, 2003.
 
 Id.
 
 at ¶ 6. On July 14, 2003, he traveled to Blaine, Washington, and attempted to cross the border into Canada.
 
 Id.
 
 at ¶ 5. At the border crossing, the Canadian Immigration Service inspected his United States visa waiver card and determined that it had expired.
 
 Id.
 
 The immigration official instructed Dr. Handa that he should go to the United States border crossing to clarify his status because he may have trouble re-entering the United States.
 
 Id.
 
 Dr. Handa signed a written withdrawal of his application to enter Canada, and agreed to leave Canada expeditiously. Government ■ Appendix, docket no. 10, p. 45. Dr. Handa left the Canadian border crossing, drove further into Canada, around the Canadian flagpole, and then back to the United States immigration inspection office. Petitioner’s Reply, docket no. 13, Exhibit 1, Handa Deck ¶ 5.
 

 At the United States border, Dr. Handa explained to the immigration inspectors the circumstances regarding why his visa had expired.
 
 Id.
 
 at 6. The immigration inspectors instructed him that he should make arrangements to fly to the United Kingdom from Canada, leaving voluntarily.
 
 Id.
 
 The immigration inspectors also instructed him that he was required to have a customs declaration signed at the immigration counter.
 
 Id.
 
 While he was waiting at the immigration counter for a customs declaration, another immigration official informed him that he needed to be taken into custody for deportation.
 
 Id.
 
 at ¶ 7. After being arrested, Dr. Handa was taken to the Blaine police station, and later transported to the Seattle INS/ICE detention facility.
 
 Id.
 
 at ¶ 8.
 

 On July 17, 2003, Dr. Handa filed this Petition for Habeas Corpus. On July 21, 2003, after a preliminary hearing was held,
 
 *MCDXII
 
 Dr. Handa was deported to the United Kingdom. The Government filed a motion to dismiss for lack of subject matter jurisdiction, docket no. 9. In response, Dr. Han-da seeks a declaratory judgment that his departure does not constitute “removal” or “deportation,” but rather a denial of admissibility, under the applicable immigration laws, docket no. 13.
 

 Discussion
 

 I. GOVERNMENTS’ MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.
 

 The Government seeks to dismiss Dr. Handa’s habeas petition pursuant to FED. R. CIV. P. 12(b)(1) on the ground that the Court lacks subject matter jurisdiction.
 

 Historically, courts have held that habeas jurisdiction under 28 U.S.C. § 2241 does not extend to actions filed by a deported or removed alien.
 
 Miranda v. Reno,
 
 238 F.3d 1156, 1158-59 (9th Cir.2001). The rationale is that an alien outside the United States cannot satisfy the “in custody” requirement for habeas jurisdiction under 28 U.S.C. § 2241.
 
 Id.
 
 However, the Ninth Circuit has recently held that if an alien files a habeas petition prior to his removal from the United States, his subsequent removal does not moot the case, thereby destroying subject matter jurisdiction, if there are “collateral consequences” attendant to the alien’s deportation that create concrete legal disadvantages. Zeg
 
 arra-Gomez v. INS,
 
 314 F.3d 1124, 1125. (9th Cir.2003). The court found that there were collateral consequences when a deportation affects the aliens ability to return to the United States: “As his inability to return is a concrete disadvantage imposed as a matter of law, the fact of his deportation did not render the pending habeas petition moot.”
 
 Id.
 
 at 1127. Under
 
 Zegarra-Gomez,
 
 the fact that Dr. Handa was subsequently deported after his habeas petition was filed does not deprive the Court of jurisdiction. The remedy Dr. Handa seeks is directly related to the collateral consequence of being deported: his inability to return to the United States for ten years.
 

 Although recognizing the applicability of
 
 Zegarrar-Gomez
 
 to this action, the Government nonetheless contends that the Court lacks jurisdiction to hear Dr. Han-da’s petition. First, the Government argues that Dr. Handa must exhaust all available judicial and administrative remedies before seeking relief under 28 U.S.C. § 2241, notwithstanding the
 
 Zegarra-Gomez
 
 decision. Government cites
 
 Castro-Cortez v. INS,
 
 239 F.3d 1037, 1047 (9th Cir.2001) and
 
 Batyuchenko v. Reno & INS,
 
 56 F.Supp.2d 1164, 1164 (W.D.Wash.1999) in support, which both acknowledge that a petitioner must exhaust available administrative remedies before proceeding under 28 U.S.C. § 2241. The Government argues that Dr. Handa has an administrative remedy available to him under 8 C.F.R. § 217.2(b)(2), which provides that an immigrant may apply for a waiver of inadmissibility for a visa. However, the “administrative remedy” the Government speaks of is not the same type of remedy courts generally refer to. In
 
 Castro-Cortez
 
 and
 
 Batyuchenko
 
 when the courts discussed “administrative remedies” they were referring to direct appeals.
 
 See Castro-Cortez,
 
 239 F.3d at 1047;
 
 Batyuchenko,
 
 56 F.Supp.2d at 1164. As discussed below, Dr. Handa waived his right to a direct appeal regarding any findings of his inadmissibility or deportability by choosing to enter the United States under the VWP. Accordingly, the Governments’ argument is not persuasive because Dr. Handa does not have an “administrative remedy” available to exhaust.
 

 Second, the Government argues that Dr. Handa waived his right to appeal the decision regarding his inadmissibility
 
 *MCDXIII
 
 or deportability.
 
 [1]
 
 The Governments’ argument has merit. As a condition to entering the United States under the VWP, Dr. Handa was required to execute a waiver: “I hereby
 
 waive any rights to review or appeal
 
 of an immigration officer’s
 
 determination as to my admissibility, or to contest, other than on the basis of an application for asylum, any action in depoHation.”
 
 Government Appendix, docket no. 10, p. 47; Governments’ Motion to Dismiss, docket no. 9, Exhibit 1, p. 2. (emphasis added). It is undisputed that Dr. Handa has not applied for asylum. The Government contends that a Court order declaring that Dr. Handa was “inadmissible” rather than “deportable” would require the court to review the immigration officer’s determination of Dr. Handa’s deportability, which is the type of review Dr. Handa waived as a condition to entering under the VWP.
 

 The District Court in
 
 Tsukamoto v. Radcliffe,
 
 29 F.Supp.2d 660 (D.Haw.1998) addressed a similar issue. In 1992, the plaintiff, a Japanese citizen, was stopped by customs agents at Honolulu International Airport.
 
 Id.
 
 Plaintiff entered the United States pursuant to the VWP. A pipe containing marijuana residue was found in his luggage.
 
 Id.
 
 No prosecutorial action was taken, and he was allowed to continue his vacation in Honolulu, Hawaii.
 
 Id.
 
 In 1997, plaintiff was refused entry into the United States because of the 1992 incident. Subsequently, a determination was made that plaintiff was inadmissible under the VWP.
 
 Id.
 
 at 661. Plaintiff brought suit in district court seeking a declaratory judgment that he was admissible to the United States.
 
 Id.
 
 The Court found that the VWP precluded review because plaintiff had waived all right to appeal or review the decision of admissibility.
 
 Id.
 
 at 661-62.
 

 Similarly, the district court in
 
 Polizio v. Jenifer,
 
 217 F.Supp.2d 811, 815 (E.D.Mich.2002), held that the petitioner was not denied due process under the VWP, when he was not permitted to contest his deportation. The court reasoned as follows:
 

 While Petitioner may not like that his entry under the VWP[] came with a waiver of rights, he received the benefits of the VWP[] — namely, entering this country without a visa. He must now bear the consequences of having violated the terms of his agreement. Petitioner voluntarily entered the United States and voluntarily waived his rights to challenge
 
 any aspect of his depoHation except to seek asylum.
 

 Id.
 
 at 816 (emphasis added);
 
 see also Nose v. Attorney General of United States,
 
 993 F.2d 75, 80 (5th Cir.1993) (holding that 8 U.S.C. § 1187(b) precluded petitioner from applying for any other forms of relief other than asylum.)
 

 Dr. Handa does not attempt to distinguish
 
 Tsukamoto
 
 and
 
 Polizio.
 
 Dr. Handa simply asserts that nothing in those decisions is inconsistent with
 
 Zegarrar-Gomez. Zegarra-Gomez,
 
 however, is inapplicable because it did not involve waivers under the VWP.
 

 Dr. Handa also argues that while a person who enters under the VWP agrees not to contest any lawful action for deporta
 
 *MCDXIV
 
 tion, the person does not give up his right to challenge the Governments’ action as unconstitutional or in violation of the statute.
 
 [2]
 
 Petitioner’s Reply, docket no. 13, p. 23. Dr. Handa relies heavily on
 
 Gete v. INS,
 
 121 F.3d 1285 (9th Cir.1997). In
 
 Gete,
 
 the Ninth Circuit held that the district court had subject matter jurisdiction over the petitioners’ action alleging that the INS’s process for forfeiture of vehicles violated the Fourth, Fifth, and Eighth Amendments of the Constitution, despite the fact that the merits of the INS determination were unreviewable.
 
 Id.
 
 at 1291. The court held that a challenge to an agency’s procedures on
 
 constitutional grounds
 
 may properly be brought in federal court, even though a challenge on the merits would be precluded.
 
 Id.
 
 at 1291-92 (emphasis added).
 

 Dr. Handa’s argument is unpersuasive. First, while it may be true that Dr. Handa has not waived his right to challenge the constitutionality of the VWP or the Governments’ actions, Dr. Handa has failed to allege any constitutional violations. Dr. Handa’s habeas petition and briefing do not cite any sections of the Constitution that have allegedly been violated by the INS procedures. Second, although Dr. Handa alleges that the immigration officials violated the applicable statutes and regulations, Dr. Handa does not seek any relief specific to that allegation. The relief requested in the habeas petition is an order declaring that his departure from the United States was not a “removal” or “deportation.”
 
 See
 
 Habeas Petition, docket no. 1, p. 8. The relief Dr. Handa seeks requires the Court to go beyond merely considering an alleged violation of a statute; the Court would have to consider the merits of the case. Dr. Handa cannot vitiate the VWP waiver provisions by having the Court review the immigration officials’ determination as to his deportability under the guise of an alleged statutory violation.
 

 As noted in
 
 Polizio,
 
 a person entering under the VWP waives rights to challenge “any aspect of his deportation except asylum.”
 
 Polizio,
 
 217 F.Supp.2d at 816. In this case, there is no evidence that Dr. Handa failed to read or did not understand the waiver provisions found in form I-94W. Although Dr. Handa is not directly appealing the decision of the immigration officials, he does seek an order that is inconsistent with their decision and that would require the Court to review the merits of the case. Accordingly, the relief sought by Dr. Handa is precluded by the waiver he signed attendant to his admission under the VWP. Therefore, the Court GRANTS the Governments’ motion to dismiss for lack of subject matter jurisdiction.
 

 II. Petitioner’s Declaratory Judgment Action
 

 Even assuming that the Court has subject matter jurisdiction to hear to Dr. Handa’s claims, Dr. Handa has failed to
 
 *MCDXV
 
 establish that he is entitled to his requested relief.
 

 First, Dr. Handa contends that he “departed” from the United States, once he left the Canadian border, traveled into the interior of Canada, and drove around the Canadian flagpole. He argues that upon returning to the United States border to clarify his visa status, he was seeking “admission” to the United States. Dr. Handa argues that because he “departed” the United States he should be classified as an individual who has been refused admission, rather than an individual that has been removed or deported.
 

 As Dr. Handa correctly points out, the applicable statute and regulations draw a distinction between (a) those individuals who are seeking admission under the VWP, and (b) those individuals who have been admitted under the VWP and are apprehended inside the United States.
 
 See 8
 
 C.F.R. § 217.4(a)-(b). Those individuals who are refused admission into the United States are not deemed to have been removed or deported from the United States and are not subject to the ten year re-entry bar in 8 U.S.C. § 1182(a)(9)(A). 8 C.F.R. § 217.4(a).
 

 Dr. Handa quotes
 
 Mendoza v. INS,
 
 16 F.3d 335, 337 (9th Cir.1994) for the proposition that the Ninth Circuit has made it categorically clear that a physical departure from the United States is a departure in law. However, the issue presented in
 
 Mendoza
 
 was whether a return to the United States following a three-day departure to Mexico constituted an “entry.”
 
 Id.
 
 at 336. The court was not faced with the questions of what constitutes “departure” and whether physical departure and legal departure are synonomous. The petitioner in
 
 Mendoza
 
 unquestionably departed the United States in both a physical and legal sense because the petitioner legally entered Mexico as a citizen of that country.
 
 Id. Mendoza
 
 merely answered the question of whether a return to the United States after a departure constitutes an entry. The question before this Court, however, is whether Dr. Handa actually “departed” from the United States. Accordingly,
 
 Mendoza
 
 is not applicable.
 

 The Board of Immigration Appeals, in
 
 Matter ofT,
 
 6 I
 
 &
 
 N Dec. 638 (BIA 1955), addressed an analogous issue to the one presented in this petition. The BIA held that a person who leaves the United States but does not enter another country does not “enter” the United States upon his return.
 
 Id. Matter of T,
 
 acknowledges that there is a difference between “physical” departure and “legal” departure. The INS has taken a similar position: “the mere fact that the alien has been physically present on foreign soil is not sufficient to establish that the alien has departed from and is seeking to reenter the United States.” INS Issues New Procedures for Entry of Aliens Granted Advance Parole, 70
 
 Interpreter Releases
 
 1675, 1676 (Dec. 20, 1993). The BIA’s and INS’s reasoning is persuasive. Dr. Handa has not cited any applicable case law that takes a contrary position.
 

 In this case, Dr. Hands was never admitted into Canada; he was instructed to return to the United States boarder to clarify his visa status. In fact, Dr. Handa signed a Canadian form withdrawing his
 
 application
 
 to enter Canada. The fact that Dr. Handa was physically permitted to drive past the Canadian border crossing and drive around the Canadian flag pole, does not change the fact that Dr. Handa had not legally entered Canada. Because Dr. Handa had not legally entered Canada, Dr. Handa did not legally depart from the United States. Accordingly, Dr. Handa was appropriately subject to deportation under 8 C.F.R. § 217.4(b) as an alien apprehended inside the United States.
 

 Second, Dr. Handa argues that he cannot be deemed deported from the Unit
 
 *MCDXVI
 
 ed States because immigration officials failed to comply with the regulations governing the issuance of orders of deportation. Dr. Handa argues that there was no determination that he was deportable under one of the particular grounds of deportation listed in section 237 of the Act and that his removal was not determined by the district director, as required by 8 C.F.R. § 217.4(b). Dr. Handa’s arguments lack merit. First, nothing in the text of 8 C.F.R. § 217.4(b) requires that the specific ground for deportation be expressly stated; all that is required is that an immigration officer determine that an alien is deportable under one of the grounds listed in section 237 of the Act.
 
 [3]
 
 Moreover, Dr. Handa was given a Notice to Alien Ordered Removed/Departure Verification form which notified him that he was being deported as a VWP violator: “You have been found inadmissible to the United States ... or deportable under the provisions of section 237 of the Act as a Visa Waiver violator .... for a period of 10 years from the date of your departure from the United States as a consequence of your having been ordered removed ....”
 
 [4]
 
 Petitioner’s Reply, docket no. 13, Exhibit 1, Handa Deck, Attachment A. Accordingly, the immigration officials made a determination as to Dr. Handa’s deportability in compliance with 8 C.F.R. § 217.4(b). Second, based on the declarations submitted by the Government, the Seattle Field Office Director for Detention and Removal Operations, Phillip C. Crawford, concurred with the decision that Dr. Handa was deportable as a VWP violator. Brown Deck, docket no. 17, ¶ 4.
 

 Lastly, Dr. Handa argues that the Governments’ removal procedures violate the INA because he was not entitled to sit before an immigration judge. Dr. Handa cites INA § 240(a)(3), which governs removal procedures: “Unless otherwise specified in this chapter, proceedings under this section shall be the sole and exclusive procedure for determining whether an alien may be .. removed from the United States.” 8 U.S.C. § 1229a(a)(3). Under this “exclusive” procedure, an alien is entitled to sit before an immigration judge, to have counsel, to have a reasonable opportunity to examine the evidence against him, to present evidence on his behalf, and to cross-examine witnesses presented by the Government.
 
 See
 
 8 U.S.C. § 1229a(b)(4). Dr. Handa, however, overlooks the conditional language of INA § 240(a)(3): “Unless otherwise specified in this chapter.” Congress has “otherwise specified” that under the VWP, an alien waives his right to any review or appeal of an immigration officer’s determination as to his deportability. 8 U.S.C. 1187(b);
 
 see also, Wigglesworth v. INS,
 
 319 F.3d 951, 960 (7th Cir.2003) (VWP deportee “waived right to a hearing on her deportation and her right to apply for discretionary relief.”). 8 C.F.R. § 217.4(b) clarifies this by providing that deportation of an alien under the VWP “shall be effected
 
 without
 
 referral of the alien to an immigration
 
 *MCDXVII
 
 judge for determination of deportability. (Emphasis added). Contrary to his contention, Dr. Handa, a VWP entrant, was not entitled to a hearing before an immigration judge.
 

 Dr. Handa is not without a remedy. The Notice to Alien Ordered Removed/Departure Verification form given to Dr. Handa provides:
 

 After your deportation or removal has been effected, if you desire to reenter the United States within the period during which you are barred, you must request and obtain permission from the Attorney General to reapply for admission into the United States. You must obtain such permission prior to commencing your travel to the United States. Application forms for requesting such permission may be obtained by contacting any United States Consulate or office of the United States Immigration and Naturalization Service.
 

 Petitioner’s Reply, docket no. 13, Exhibit 1, Handa Decl., Attachment A. The Court recommends that Dr. Handa pursue this avenue of relief.
 

 CONCLUSION
 

 The Court, having considered the submissions by the parties, hereby GRANTS the Governments’ Motion to Dismiss, docket no. 9. The Court lacks subject matter jurisdiction to grant the relief petitioner requests. Petitioner waived any right to review or appeal the immigration officials’ determination of his deportability when he entered the United States pursuant the Visa Waiver Program. Even if the Court had jurisdiction, however, petitioner’s requested relief would be denied based on the merits.
 

 IT IS SO ORDERED.
 

 [1]
 

 . As a prefatory matter, the Governments' argument that Dr. Handa waived his right to any review of his deportation depends on whether Dr. Handa departed from the United States. The VWP waiver only applied to deportations arising out of Dr. Handa's March 2, 2003 admission. If Dr. Handa departed from the United States after the 90-day period expired, the VWP waiver would lose any force it once had. As discussed
 
 infra
 
 part II, however, the Court finds that Dr. Handa did not legally depart from the United States. Accordingly the VWP waiver Dr. Handa signed attendant to his March, 2, 2003, admission is applicable to the current proceedings.
 

 [2]
 

 . Dr. Handa cites
 
 INS v. St. Cyr,
 
 533 U.S. 289, 291-92, 121 S.Ct 2271, 150 L.Ed.2d 347 (2001), for the broad proposition that a non-citizen subject to deportation can bring a challenge to the lawfulness of the deportation order in habeas proceedings. However, the waiver provisions of the VWP were not at issue in
 
 St. Cyr.
 
 The issue was whether the district court possessed habeas jurisdiction to review the Attorney General’s determination "that [certain statutory] restrictions on discretionary relief from deportation ... do not apply to removal proceedings brought against an alien who pled guilty to a deportable crime before their enactment”.
 
 Id.
 
 The issues presented in this case are clearly distinguishable. Dr. Handa’s reliance on
 
 McNary v. Haitian Refugee Center,
 
 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991),
 
 Webster v. Doe,
 
 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988),
 
 Califana
 
 v.
 
 Sanders,
 
 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) is likewise misguided because they do not involve the issues presented in this action.
 

 [3]
 

 . 8 C.F.R. § 217.4(b) provides that "an alien who has been admitted to the United States under the provisions of 217 of the Act and of this part
 
 who is determined by an immigration officer to be deportable
 
 from the United States under one or more of the grounds of deporta-bility listed in section 237 of the Act shall be removed from the United States....” (emphasis added).
 

 [4]
 

 . The fact that the form originally provided that Dr. Handa was inadmissible did not preclude the immigration officials from making a contrary determination. The declaration of Blake Brown establishes that the box declaring that Dr. Handa was inadmissible was incorrectly checked, and that the correct box was subsequently checked upon the discovery of Dr. Handa’s status. Brown Decl, docket no. 17, ¶ 3. It is undisputed that Dr. Handa received a copy of the corrected form.