**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANUJ HANDA,
   *Petitioner-Appellant,*

v.

A. NEIL CLARK,* Field Office
Director, Seattle Field Office, U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT; TOM RIDGE,
Secretary of Homeland Security;
and CONDOLEEZZA RICE,**
Secretary of State,
   *Respondents-Appellees.*

No. 04-35293

D.C. No.
CV-03-02350-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted
March 8, 2005—Seattle, Washington

Filed March 25, 2005

Before: Ferdinand F. Fernandez, A. Wallace Tashima, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Fernandez

---

*The current Field Office Director, A. Neil Clark, is substituted for his predecessor Aaron G. Wilson, the Former Field Office Director. Fed. R. App. P. 43(c)(2).

**Condoleezza Rice is substituted for her predecessor, Colin L. Powell, as Secretary of State. Fed. R. App. P. 43(c)(2).

## COUNSEL

Robert Houston Pauw, Gibbs Houston Pauw, Seattle, Washington, for the petitioner-appellant.

Christopher Lee Pickrell, Assistant United States Attorney, Seattle, Washington, for the respondents-appellees.

## OPINION

FERNANDEZ, Circuit Judge:

Anuj Blake Handa appeals the district court's denial of his petition for habeas corpus relief filed against the Director of the Seattle Field Office of the Bureau of Immigration and Customs Enforcement (BICE).[1] He asserts that he was wrongfully removed to the United Kingdom after he overstayed the ninety-day limit on his visa, which was issued pursuant to the Visa Waiver Program, 8 U.S.C. § 1187 (VWP). We affirm.

## BACKGROUND

Handa is a citizen of the United Kingdom, who entered the

---

[1]*Handa v. Crawford*, 312 F. Supp. 2d 1367 (W.D. Wash. 2004) (*Handa I*).

United States under the VWP on March 2, 2003. Under the terms of that program, he was required to sign a waiver which was designed to facilitate use of the program and preclude the need for formal removal proceedings. *See* 8 U.S.C. § 1187(b). The waiver reads as follows, in pertinent part:

> WAIVER OF RIGHTS: I hereby waive any rights to review or appeal of an immigration officer's determination as to my admissibility, or to contest, other than on the basis of an application for asylum, any action in deportation.
>
> . . . .
>
> WARNING: . . . You are authorized to stay in the U.S. for 90 days or less . . . . Violation of these terms will subject you to deportation.

His purpose in coming was to take medical board examinations, which were held on June 11, 2003, beyond the ninety-day period — that period expired on June 2, 2003. He asserts, however, that he had planned to leave the United States before the ninety-day period expired and then to reenter. He, for various reasons, did not do so. He stayed on and even scheduled his return trip to the United Kingdom for July 22, 2003, a date, obviously, far beyond the expiration of his ninety days.

In the meantime, Handa decided that he would take a three-day vacation trip to Vancouver, British Colombia. In pursuit of that diversion, on June 14, 2003, he presented himself to the Canadian authorities at the Blaine, Washington, border crossing. He was inspected there by a member of the Canadian Immigration Service, who noted that Handa's VWP visa had expired. That official did not admit Handa to Canada. Handa, for his part, voluntarily withdrew his application to enter Canada and left its soil without delay, as he promised to do. He was told to turn the car around and go back to the

United States immigration authorities, which he promptly did by circling the Canadian flag pole, recrossing the border, and presenting himself to the United States officials. Those officials arrested him as a visa overstay and in due course removed him to the United Kingdom on July 21, 2003. In the meantime, however, Handa filed the present habeas corpus petition on July 17, 2003.

The district court denied Handa's petition for lack of jurisdiction, and, in the alternative, on the merits. *Handa I*, 312 F. Supp. 2d at 1375. This appeal followed.

## STANDARD OF REVIEW

We review the district court's denial of Handa's petition for a writ of habeas corpus de novo. *Ferreira v. Ashcroft*, 382 F.3d 1045, 1049 (9th Cir. 2004).

## JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). Whether the district court had subject matter jurisdiction presents a more knotty problem, most of which was unraveled in the district court's excellent opinion, much of which we agree with and adopt, as hereinafter indicated. We will take up each of the government's challenges in turn.

First, the government asserts that because Handa has been physically removed, jurisdiction to proceed has terminated. We, however, agree with the district court that because Handa's petition for a writ of habeas corpus was filed before his physical removal and because there are collateral consequences as a result of that removal,[2] jurisdiction remains. In short, we agree with and adopt the district court's discussion of this issue in *Handa I*, 312 F. Supp. 2d at 1370.

---

[2]*See* 8 U.S.C. § 1182(a)(9)(A)(ii) (inadmissible for ten years).

Second, we agree with the district court that because Handa did waive his rights, he actually had no further administrative remedies to exhaust at the time he commenced his habeas corpus action. *Id.*

Third, we further agree with the district court that Handa did not properly raise constitutional claims before it. *See id.* at 1372. The sum total of his presentation was a statement in his habeas corpus petition that, "[b]y failing to adopt reasonable and lawful procedures for determining whether a person is removable under 8 C.F.R. § 217.4, BICE has violated substantive and procedural Due Process." As a result, Handa has waived his constitutional claims on appeal because a mere passing reference to a constitutional claim is not sufficient to raise that claim before the district court, and does not preserve the claim for our review. *See Crawford v. Lungren*, 96 F.3d 380, 389 n.6 (9th Cir. 1996). Briefly stated, a party cannot treat the district court as a mere ill-placed bunker to be circumvented on his way to this court where he will actually engage his opponents. *Id.*

Nevertheless, we are not able to agree with the district court that Handa entirely waived his claim that the government improperly applied the VWP procedures to him. *Handa I*, 312 F. Supp. at 1372. He can still assert that (1) he was not subject to them at all, and (2) the law required that he be brought before an immigration judge (IJ) before he was removed.

We do agree that when Handa signed the waiver, he gave up the possibility of other forms of relief, as well as the opportunity to challenge the merits of a removal decision arising out of his VWP entry. *See, e.g.*, *Itaeva v. INS*, 314 F.3d 1238, 1241-42 (10th Cir. 2003); *Nose v. Attorney Gen. of the United States*, 993 F.2d 75, 80 (5th Cir. 1993). It is true that a decision of this case requires consideration of the merits of Handa's position that he was no longer in the VWP at all. However, that is not the equivalent of deciding the merits of

a claim by a person in the VWP that he should not be removed. Nor is the claim that the government ignored the statutory procedures for removal when it did not take the case to an IJ waived.[3] We will, therefore, consider those claims.

## DISCUSSION

While we do not agree with the district court's determination that it lacked jurisdiction to consider Handa's claim that he was not under the VWP at all, we do agree with its conclusion that Handa's departure-and-reentry argument is unpersuasive. We, therefore, adopt the district court's decision in *Handa I*, 312 F. Supp. 2d at 1372-74, as dispositive of that claim. We add only that it would be amazing indeed if Congress intended that an alien who was here on the special VWP could remove himself from the strictures of that program by the maneuver that Handa claims to have executed here — a mere physical entry into Canada for a few seconds.

That leaves us with Handa's claim that the statutory procedures were not followed because he was not brought before an IJ. In analyzing this claim the district court said:

> Lastly, Dr. Handa argues that the Governments' removal procedures violate the INA because he was not entitled to sit before an immigration judge. Dr. Handa cites INA § 240(a)(3), which governs removal procedures: "Unless otherwise specified in this chapter, proceedings under this section shall be the sole and exclusive procedure for determining whether an alien may be . . . removed from the

---

[3]Handa also suggests that the wrong immigration officer made the removal decision. But the record shows that it was made by the persons to whom removal authority was delegated. *See* 8 C.F.R. § 217.4(b); *see also* 8 C.F.R. §§ 1.1(o), 2.1. Similarly, it is clear that he was notified of the grounds of his removal — violation of the VWP. In short, we agree with the district court's disposal of those claims. *See Handa I*, 312 F. Supp. 2d at 1373-74.

United States." 8 U.S.C. § 1229a(a)(3). Under this "exclusive" procedure, an alien is entitled to sit before an immigration judge, to have counsel, to have a reasonable opportunity to examine the evidence against him, to present evidence on his behalf, and to cross-examine witnesses presented by the Government. *See* 8 U.S.C. § 1229a(b)(4). Dr. Handa, however, overlooks the conditional language of INA § 240(a)(3): "Unless otherwise specified in this chapter." Congress has "otherwise specified" that under the VWP, an alien waives his right to any review or appeal of an immigration officer's determination as to his deportability. 8 U.S.C. 1187(b); *see also*, *Wigglesworth v. INS*, 319 F.3d 951, 960 (7th Cir. 2003) (VWP deportee "waived right to a hearing on her deportation and her right to apply for discretionary relief."). 8 C.F.R. § 217.4(b) clarifies this by providing that deportation of an alien under the VWP "shall be effected *without* referral of the alien to an immigration judge for determination of deportability." (Emphasis added). Contrary to his contention, Dr. Handa, a VWP entrant, was not entitled to a hearing before an immigration judge.

*Id.* at 1374-75. There is much force to the district court's determination, but more does need to be said because the statutory language is not hyaline. It does not expressly state that a VWP alien cannot appear before an IJ; that demands more discussion.

In *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299, 1305 (9th Cir. 2004), we held that the procedures for reinstatement of prior orders of removal had to be conducted before an IJ and that a regulation to the contrary was invalid. In so doing, we applied a *Chevron*[4] analysis. *Morales-Izquierdo*, 388 F.3d at 1302-04.

---

[4] *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45, 104 S. Ct. 2778, 2781-83, 81 L. Ed. 2d 694 (1984); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33, 120 S. Ct. 1291, 1300-01, 146 L. Ed. 2d 121 (2000); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424, 119 S. Ct. 1439, 1445, 143 L. Ed. 2d 590 (1999).

We referred to the fact that "[t]he plain language of INA § 240(a) [8 U.S.C. § 1229a(a)] unambiguously indicates that an immigration judge must decide the 'inadmissibility' or 'deportability' of an alien." *Id.* at 1303. The government argued that reinstatement of a removal order was different, but we responded that the provision in question did not say so, and Congress could have said so if it had wished to. *Id.* at 1304.

**[1]** Here, as the district court recognized, 8 U.S.C. § 1187(b) seems to say so, at least in a backhanded fashion. It provides that the alien must waive any right — "(1) to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or (2) to contest, other than on the basis of an application for asylum, any action for removal of the alien." *Id.* And, of course, 8 U.S.C. § 1229a(a) itself indicates that its provisions are not exclusive; they apply: "[u]nless otherwise specified in this chapter." *Id.* § 1229a(a)(3). Again, § 1187(b) does appear to otherwise specify.

Some clarity is added by the context of 8 U.S.C. § 1187(b)'s provisions as a whole. At the port of entry, the alien waives the right to any review or appeal of an immigration officer's determination. *Id.* § 1187(b)(1). Once allowed to enter, the alien, as relevant here, gives up the right to "contest" his removal. *Id.* § 1187(b)(2). Of course, the word "contest" refers to disputation, contention, litigation, and the like. *See, e.g.*, 1 The Compact Edition of the Oxford English Dictionary 536 (1971); Webster's Third New Int'l Dictionary 492 (1986). When the government decides to remove a VWP alien, the alien has already waived the right to dispute or litigate the removal, but the whole purpose of having proceedings before an IJ is to have that officer preside over just such a dispute. *See* 8 U.S.C. § 1229a(b).[5] Requiring a hearing

---

[5]The IJ "shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." *Id.* § 1229a(b)(1).

before an IJ would make little sense; it would only add delay to what should be an expeditious procedure.

**[2]** We can be quite confident that Congress did wish to make the VWP process quick and simple. Congress saw that the great advantages of the program were promoting better relations with friendly nations, eliminating unnecessary barriers to travel, stimulating the travel industry, and alleviating vast amounts of paperwork, particularly paperwork at consular offices. *See* H.R. Rep. No. 99-682, pt. I, at 50 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5654. At the same time, Congress was well aware of the potential for abuse that the program made possible. *Id.* And Congress sought to eliminate that by, among other things, using careful screening and monitoring programs, while also providing that overstays will be deportable "without any judicial recourse or review, except when claiming asylum." H.R. Rep. No. 106-564, at 7 (2000). Again, this helps demonstrate that Congress wished to have violators, like Handa, removed without the often extensive delays and expensive processes which are involved in providing the adversary procedures that are presided over by IJs. Surely, Congress did not wish to shift the great burdens on the consular offices to the Attorney General. Yet, it must be admitted that the answer to our question is still not pellucid.

This, then, presents a classic case for administrative construction. As the Supreme Court has told us:

> If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence

---

Moreover, the alien has the right to counsel and "shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." *Id.* § 1229a(b)(4)(A), (B).

of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 843, 104 S. Ct. at 2781-82 (footnotes omitted); *see also Aguirre-Aguirre*, 526 U.S. at 424, 119 S. Ct. at 1445.

**[3]** Here, when faced with the possible uncertainty created by Congress's determination that VWP visa holders could not seek review of admissibility determinations or contest removal, and Congress's declaration that, in general, both sorts of proceedings are to be conducted before IJs, the agency resolved any ambiguity by deciding that, in general, "removal shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability . . . ." 8 C.F.R. § 217.4(b)(1). That interpretation is not "arbitrary, capricious, or manifestly contrary to the statute." *United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1015 (9th Cir. 2004). Therefore, Handa's claim that he was improperly removed because he was not permitted to have an IJ decide whether he should be removed must come to naught.

## CONCLUSION

The VWP is designed to eliminate unnecessary red tape and to make it possible for people to travel more easily to this country, while also making it easier for United States citizens to travel more easily to cooperating countries. But the linchpin of the program is the waiver, which assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays.

Handa, who was well aware of the restrictions upon his entry and of his waiver, took it upon himself to overstay. He was caught out and removed. He now seeks relief from the consequences of his actions, but we need not be as strict as Rhadamanthus in order to observe that Handa is not entitled to relief from those consequences. Neither his vermiculate claim that he bypassed the VWP by his brief step onto Canadian soil (a whole new kind of step transaction), nor his factitious argument that he had a right to appear before an IJ, where he could not contest his removal, can serve his present purposes. In fine, he is a peregrine who chose to violate our laws, and who was properly removed from our shores.

AFFIRMED.